## In re Miller's Estate

*William H. Kready*, for petitioner.

*Louis S. May* and *Charles G. Baker*, contra.

APPEL, P. J., November 3, 1932.—John B. Miller was for many years a faithful and competent official serving in the prothonotary's office of Lancaster County. Because of failing health about 1928, he withdrew from his former activities and lived a retired life in the Borough of New Holland, this county. He had accumulated a large estate, consisting of real estate, stocks, bonds and other securities. Realizing the necessity for assistance in the management of his affairs, on January 23, 1932, he executed and delivered to Jacob F. King, his friend and adviser, the following letter of attorney, recorded the same day in the recorder's office at Lancaster in letter of attorney book 16, at page 213:

"KNOW ALL MEN BY THESE PRESENTS THAT I, John B. Miller of the Borough of New Holland, County of Lancaster and State of Pennsylvania, have constituted, made and appointed, and by these Presents do constitute, make and appoint Jacob F. King, of the City of Lancaster, County of Lancaster and State of Pennsylvania, lawful Attorney for me and in my name and stead, and to my use, to ask, demand, sue for, levy, recover and receive, all such sum and sums of money, debts, rents, goods, wares, dues, accounts, and other demands whatsoever, which are or shall be due, owing, payable, and belonging to me or detained from me in any manner of ways or means whatsoever, my said Attorney to have full power and authority to receive all checks for rents, dividends, interest on bonds, etc., and all moneys whatsoever and to endorse checks for the same, to invest any surplus income, to change and sign for all sale and transfer of bonds and any and all securities, and in any re-organization of any companies to sign and receive all necessary papers; to have power and authority to visit my bank box in the Lancaster Trust Company whenever necessary, also to have full power and authority to sign all checks on my account in the Lancaster Trust Company and in any other banks that I may have an account; also to endorse all checks, and sign necessary papers, to pay all bills, to employ help for me, to make any and all contracts and agreements that might be for my benefit and welfare; also to sell any or all real estate, to execute deeds for the same; in general to attend

to and to complete in detail all kind and manner of business that might be necessary to be attended to, giving and granting unto my said Attorney by these Presents my full and entire power and authority, in and about the premises, to have, use, and take all lawful ways and means, in my name for the purposes aforesaid; and upon the receipt of any such debts, dues, or sums of money aforesaid, acquittances, or other sufficient discharges, for me and in my name to make, seal and deliver, and generally all and every other act and acts, thing and things, device and devices in the law whatsoever needful and necessary to be done in and about the premises, form and in my name to do, execute and perform, as fully, largely and amply, to all intents and purposes, as I might or could do, if I were personally present, or as if the matter required more special authority than is herein given; and Attorneys, one or more under me for the purpose aforesaid, to make and constitute, and again at pleasure to revoke; ratifying, allowing, and holding for firm and effectual, all and whatsoever my said Attorney or my substitute shall lawfully do in and about the premises, by virtue hereof.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal the 23rd day of January, in the year of our Lord one thousand nine hundred and thirty-two.

"SIGNED, SEALED and DELIVERED
  IN THE PRESENCE OF
    CORA L. BAIR                       JOHN B. MILLER (SEAL)
    J. A. HOFFMAN                       (SEAL)

"STATE OF PENNSYLVANIA  } ss.
COUNTY OF LANCASTER

"This twenty-third day of January, A. D. 1932, personally appeared before me, a Notary Public in and for the State and County aforesaid, residing in Lancaster City, the above-named John B. Miller, and acknowledged the foregoing Power of Attorney to be his act and deed, and desired the same to be recorded as such, according to law.

"WITNESS my hand and notarial seal, the day and year aforesaid.
                          PAULINE K. SHIFFER,
                                  (N. P. SEAL)
                    Notary Public
                    My Commission expires
                    March 5, 1933."

King accepted the appointment contained in the above letter of attorney and performed the duties entrusted to him until June 25, 1932, when the said Miller executed and delivered a letter of revocation of the above letter of attorney to the said King, which letter of revocation was subsequently recorded in the recorder's office aforesaid in letter of attorney book 16, page 276. Due notice of this revocation was given to King, from which time the authority given in the letter of attorney was revoked and ended. On July 28, 1932, Miller executed and delivered a letter of attorney to Lewis M. Storb, Jr., which letter of attorney was subsequently recorded in the recorder's office aforesaid in letter of attorney book 16, page 294. This new and subsisting letter of attorney is substantially in the terms and phraseology of the letter of attorney given to King, now under consideration.

At the time when the first letter of attorney was executed and delivered to King the assets of Miller consisted of bonds, stocks and other securities deposited in a safe deposit box in The Lancaster Trust Company in the name of John B. Miller and a balance on deposit in the Farmers Bank & Trust Company of New Holland. He was also the owner of real estate. Pursuant to the authority given

him in the letter of attorney of January 26, 1932, King had the balance on deposit in the New Holland Bank transferred to "John B. Miller, Jacob F. King, attorney-in-fact". He also opened a new bank account in the Fulton National Bank of Lancaster, Pa., in the name of "John B. Miller, Jacob F. King, attorney-in-fact". Pursuant to further authority given him in said letter of attorney to have access to the safe deposit box of the said Miller in The Lancaster Trust Company, King proceeded to collect the due and payable coupons from the bonds deposited there from time to time, received checks in payment of dividends on corporate stocks owned by Miller and found in the safe deposit box, depositing the proceeds of the coupons and checks to the credit of the "John B. Miller, Jacob F. King, attorney-in fact", in the Fulton National Bank. This procedure was continued until the letter of attorney was revoked. At no time during this period was Miller deprived of his right of access to the safe deposit box. The registration was not changed. King was simply given access to the same under the power contained in the letter of attorney as attorney-in-fact for Miller. There was no change in the ownership of the bonds and no transfer of any of the certificates of stock. Neither was there any transfer by deed of any of the real estate from Miller to King. Subsequently on August 16, 1932, King filed in the register's office of Lancaster County an account, designated as follows: "The account of Jacob F. King, trustee of John B: Miller, of the Borough of New Holland, County of Lancaster and State of Pennsylvania, under trust agreement dated January 23, 1932, recorded in the recorder's office of Lancaster County in letter of attorney book 16, page 213, filed under provisions of the Act of Assembly of 1931, page 1384, relating to trusts inter vivos." In this account King charged himself with all the contents of the safe deposit box of Miller in The Lancaster Trust Company, with the exception of a $1,000 City of Lancaster 4½% City Improvement Bond due June 1, 1935, inadvertently overlooked. The bonds, stocks, mortgages and notes are listed and itemized at their face value. In addition the account includes items of principal paid and received by King as attorney-in-fact from January 26, 1932, to May 16, 1932. At the end of the principal account is the following: "Trustee reserves the right to claim compensation for his services and for counsel fees of his attorney's services out of the principal of the trust." Then follows an income account showing receipt of interest on bonds and dividends on stock, amounting to $8,987.68. The credit side of the income account contains payments for housekeeping expenses, nursing, supplies, repairs, income tax, building association and lodge dues, settlement of a claim against Miller for nursing, etc. Among these items is $449.38 for accountant's compensation and $224.69 for counsel fee, admitting a balance on hand of income of $4,387.96. This account was duly advertised by the register and came before the court for adjudication on September 19, 1932. The petition for adjudication recites the execution of the trust agreement (letter of attorney) by Miller to King; that said King entered upon his duties as trustee inter vivos and performed them until the trust agreement (letter of attorney) was revoked on June 27, 1932. An inventory of the securities on hand on January 28, 1932, is attached. The petitioner alleges "that each person claiming to be interested in the estate as creditor, legatee, next of kin, or otherwise, who has given written notice of his claim, has been given actual notice of the filing of the account." Finally the petitioner prays that the securities listed in the said account be awarded in kind to the said John B. Miller. At the audit counsel appeared representing John B. Miller, individually, and Lewis M. Storb, Jr., attorney-in-fact of John B. Miller; also counsel for a creditor of John B. Miller.

It is contended by counsel for the petitioner that, even though on the face of the letter of attorney he is designated as an attorney-in-fact, King is such a

trustee under a deed of trust as is contemplated by the Act of June 26, 1931, P. L. 1384. It is admitted that, except for the provision of that act, such an account as is here presented for adjudication would not be within the jurisdictional scope of the orphans' court. This provision is contained in an amendment to the Orphans' Court Act of 1917, sec. 9, which reads as follows:

"Section 9. The jurisdiction of the several orphans' courts, whether separate or otherwise, shall extend to and embrace—

. . . . . . . . . . . .

"(n) The control, removal, discharge, and settlement of the accounts of trustees of trusts inter vivos;

. . . . . . . . . . . .

"And such jurisdiction shall be exercised under the limitations and in the manner provided by law."

Generally speaking, this amendment to the Orphans' Court Act of 1917 transfers to the orphans' court jurisdiction over trustees of trusts inter vivos formerly cognizable by the courts of common pleas exercising equity jurisdiction. And it must be admitted that if the instant account would not have been so cognizable by that court, it would not now rest within the jurisdiction of the orphans' court. A jurisdictional question, therefore, arises which it is agreed shall be decided by this court in limine. Testimony was taken and evidence produced tending to show the circumstances under which the alleged deed of trust (letter of attorney) was executed and the various acts of the trustee (attorney-in-fact) performed. An alleged creditor of Miller appeared at the audit. He was not heard, because it was deemed advisable to pass on the jurisdictional question first; and it was agreed if this court assumes jurisdiction he will be given further opportunity to present and prove his claim.

The question before the court at this time for consideration and determination is:

Is the so-called letter of attorney of January 23, 1932, such a "trust inter vivos" as brings it within the jurisdiction of the orphans' court?

The paper designated as a "letter of attorney" purports on its face to be a letter of attorney with specific powers given to the "attorney-in-fact."

In pursuance of the authority given to King in the letter of attorney, he obtained access to the safe deposit box in The Lancaster Trust Company. He testified that he cut coupons from the various bonds as they became due and deposited the proceeds in his account in The Fulton National Bank standing in the name of "John B. Miller, Jacob F. King, attorney-in-fact". He did not remove any of the securities from the box except such as became due and payable. The checking account of Miller in The Lancaster Trust Company was never transferred, probably because the said trust company had closed its doors and was in the hands of the Secretary of Banking for liquidation. The checking account of Miller in The New Holland Bank was changed to "John B. Miller, Jacob F. King, attorney-in-fact". From the two accounts, that of "John B. Miller, Jacob F. King, attorney-in-fact" in the New Holland Bank and from the new account in The Fulton National Bank there were various payments made by King, as specifically set forth in the account now before us. It appears also that one or more bonds became due and were paid. The proceeds were collected by King and deposited in his account as attorney-in-fact in The Fulton National Bank. King never changed any of the registered bonds or the certificates of stock, nor were any of the notes in the safe deposit box changed or transferred; neither were the fire insurance policies on real estate owned by the said Miller changed or transferred. There were no deeds of conveyance of real estate

made by Miller to King. It appears one mortgage held by Miller was paid, and King as attorney-in-fact entered satisfaction therefor in the recorder's office.

It should be stated that King performed faithfully all the duties he assumed under the powers of the letter of attorney from the time he was so authorized until his letter of attorney was revoked. He also has rendered an accurate account of his transactions. In the short time he was active he is to be commended for his faithfulness, for his prudence, and for his absolute integrity. The account before us is a complete and accurate statement of all his acts under the letter of attorney and is a credit to him and his counsel. It contains an inventory of the contents of the safe deposit box in The Lancaster Trust Company, with the exception of a $1,000 City of Lancaster 4½ percent City Improvement Bond inadvertently omitted. It contains also items of principal and income received by him and credits taken for payments made by him during his period of activity. To none of these items of debit or credit is any exception taken.

It is contended by counsel for King that the letter of attorney under which he assumed and performed certain duties is such a trust inter vivos as brings him and his account within the Act of June 26, 1931, amending the Orphans' Court Act of 1917, and he has submitted his account for adjudication and distribution. On the other hand, it is contended by counsel for Miller that the said letter of attorney can not be construed as a deed of trust inter vivos as contemplated by the amending act, that the orphans' court is without jurisdiction, and that the petition for adjudication should be dismissed.

Deeds of trust inter vivos are solemn instrumentalities, usually in writing, made to carry out certain purposes of the settlor. In order to create such a trust the intention so to do must appear from the words of the instrument. The words so used by the settlor must be sufficient for this purpose. They must definitely show this intention; the court cannot impute a trust where none was contemplated: Steeley v. Steeley, 24 Pa. C. C. 610. Finally, there must be such transfers and conveyances as will place in the trustee the legal title to such property as may be subject to the trust, so that he may be in possession of the same and act in his own name as trustee. These principles are well understood in law to be essential to the creation of a trust inter vivos. They are likewise understood as instrumentalities in business adequate for the purposes contemplated by the settlor. When properly and legally created, such deeds of trust inter vivos have long been the concern of courts of equity. They are now by the amending Act of 1931 committed to the jurisdiction of the orphans' court. On the other hand, other instrumentalities, to wit, powers of attorney or letters of attorney, are well known in business and have a place in law and equity jurisdiction. These create only an agency and grant all necessary powers to carry out the purpose of the agency. They manifest no intention to create a trust, as construed by the textbook writers and the decisions of the courts. They give power to the attorney-in-fact to do certain things in the name and stead of the principal, never in his own name. They are instrumentalities of business in frequent use, usually for temporary purposes, specific in their direction and well understood. They differ radically from deeds of trust inter vivos.

In Warner, Assignee, v. McMullin, 131 Pa. 370, Paxson, C. J., distinguishes between what he calls quasi trustees and technical trustees over which equity has jurisdiction, and then at page 381, says:

"The term 'trust' is a very comprehensive one. As was said by Chancellor Kent, in Kane v. Bloodgood, 7 Johns. Ch. 90, cited in Yorks's App., 110 Pa. 79: 'Every deposit is a direct trust. Every person who receives money to be paid to another, or to be applied to a particular purpose, is a trustee. The cases of

hirer and letter to hire, borrower and lender, pawner and pawnee, principal and agent, are all cases of express trust,' etc. It has never been held, however, that these and the like cases are such technical trusts as to bring them within our limited equity jurisdiction."

Used in a broad and popular sense, the terms "trust" and "trustee" embrace a large variety of relationships involving responsibilities and duties, all of a fiduciary character. That this is so and that there is confidence in one person by another does not mean that these are such trusts as are within equity jurisdiction and now in the orphans' court by the amending Act of 1931, supra. This confidence is present in many ordinary transactions. In many of these relationships we use the word "trustee" and "trust" rather loosely, implying only a confidence in the execution of specific agencies. Strictly the term "trustee" does not apply to a person who is merely an agent, assignee, bailee, one charged with the expenditure of a fund for a particular purpose, committee of a lunatic, debtor, factor, guardian, executor or administrator, holder of collateral security, or who stands in other relationships that may be named. These are clearly distinguished from trusts cognizable in equity and now within the jurisdiction of the orphans' court.

See 2 C. J. 425. There it is pointed out that while agency is a trust relation demanding of the agent undivided loyalty and fidelity to the interests of the principal confided to his charge, it is not within the recognized class of trusts and is not a trust inter vivos within the act.

In ordinary agency, as in the instant case, the title to the property involved, and usually all the proceeds of the agency, remain in the principal, and the agent acts only in the name of the principal. It is to the credit of King that he did not at any time assume to be anything more than an agent of Miller, his principal. His account in bank, to wit, "John B. Miller, Jacob F. King, attorney-in-fact", and his testimony show this. In a trust, the legal title passes to the trustee and he acts in his own name; this is the essence of such a trust.

The following citations appear to throw light on the subject: 22 P. & L. Dig. Dec. c. 37966; Steeley v. Steeley, 24 C. C. 610; Smith's Estate, 144 Pa. 428; Strickler v. Scheible, 29 C. C. 308; Hartley v. Phillips, 198 Pa. 9; Rowe v. Rand, 111 Ind. 206, 12 N. E. 377; Taylor et al. v. Davis' Admin'x, 110 U. S. 330.

It appears conclusively from the evidence that the letter of attorney from Miller to King did not affect the title to any of Miller's property. The real estate was not conveyed and now stands in the name of Miller. The bonds, certificates of stock, certificates of deposit and all other assets remained in his safe deposit box in The Lancaster Trust Company unappropriated by King. The letter of attorney was effective from January 23 to June 25, 1932, and at no time within that period was Miller prevented or precluded from handling, transferring or conveying any or all of his property, either real or personal, independently of his attorney-in-fact. The letter of attorney was revocable at the will of Miller and was in fact revoked, thus ending the power, authority, and agency of King, who is responsible to his principal in another jurisdiction well recognized in law.

In our opinion the orphans' court does not have jurisdiction to consider, pass upon, confirm, or audit the account now before us, nor does the court have jurisdiction to pass upon and determine any claims against John B. Miller by reason of the filing of the account now before the court. These must be presented in another jurisdiction.

We therefore refuse to confirm and audit the account now before us and dismiss the petition.

From George Ross Eshleman, Lancaster, Pa.