## AETNA FREIGHT LINES, INC. *v.* ADAMSON.

[No. 19,951. Filed February 18, 1965. Rehearing denied March 29, 1965. Transfer denied September 26, 1966.]

*Richard D. Wagner,* of Indianapolis, *Hugh S. Jenkins,* of Columbus, Ohio, and *Krieg, DeVault, Alexander & Capehart,* of counsel, of Indianapolis, for appellant.

*Walter Myers, James K. Northam,* and *Bowen, Myers, Northam & Givan,* of counsel, of Indianapolis, for appellee.

FAULCONER, C.J.—This is an appeal from a judgment of the Superior Court of Marion County in favor of plaintiff-appellee for attorney's fees of $2,500, plus costs. The sole assignment of error is the overruling of appellant's motion for new trial.

The first three grounds in appellant's motion for new trial are: 1) the amount of recovery is too large; 2) the decision

of the court is not sustained by sufficient evidence; and 3) the decision of the court is contrary to law.

The evidence most favorable to appellee sustains the allegations of plaintiff-appellee's complaint, and the trial court's finding thereon is sustained by sufficient evidence.

"It is only where the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the ground that it is contrary to law." *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 532, 104 N. E. 2d 669.

The evidence in this case is certainly not without conflict. Neither can we say that reasonable men would have been bound to reach a contrary conclusion, considering the evidence most favorable to appellee and reasonable inferences to be drawn therefrom. We hold, therefore, that the decision of the trial court is not contrary to law.

Plaintiff-appellee testified that he performed services on the matter in suit a total of forty-five or forty-six days, ten days of which were spent out of town. Appellee stated that in his opinion he was entitled to a minimum of $200 per day, and for the days he spent out of town $225 or $250 per day. He admitted he had received a total of $6,333 prior to suit. The trial court could reasonably have found that an additional $2,500 was still due and owing appellee, and its judgment for that amount was, therefore, not too large.

Appellant's fourth ground in its motion for new trial asserts error in sustaining appellee's objection to a question propounded by appellant to its witness, Mr. Anstrom, and in overruling its offer to prove thereafter. The question was: "What was your understanding with respect to the—both the time and services covered by these bills?" (The "bills" were statements rendered by appellee for fees during the course of the employment relationship.) By its offer to prove,

appellant showed that its witness (Mr. Anstrom) would have testified that "it was his understanding that these invoices covered in full the services rendered by the Plaintiff in this case for the time designated on these separate exhibits." Both appellant and appellee in the argument section of their respective briefs treat this question as one calling for the understanding or intent of one party to a *contract* as to its terms. It was thus an attempt to prove the understanding or intent of one party to a contract as to its terms. It has been held by our Supreme Court that,

> "In construing the language of a contract, the primary purpose is to discover the mutual intention of the parties, and the intent of one party only does not suffice." *Western & Southern Life Ins. Co.* v. *Vale* (1938), 213 Ind. 601, at page 611, 12 N. E. 2d 350.

And to like effect is the following language from *Reagan* v. *Dugan* (1942), 112 Ind. App. 479, 492, 41 N. E. 2d 841:

> "The intention of the parties which will control in interpreting the meaning of a contract entered into between them is not the secret design which may dwell in a party's mind, and as to the existence of which he alone can speak, but that intention which was either expressly declared by the parties, or which flows, patent to all, from the nature and character of the act—the clear purpose to be served."

It has long been the law in Indiana that the "understanding" of one party to a contract is not admissible. *Williams* v. *Dewitt* (1859), 12 Ind. 309, 312; *Johnson* v. *Gephart* (1917), 65 Ind. App. 322, 328, 117 N. E. 270.

However, we are urged by appellant to adopt the recommendation of Wigmore in his work on Evidence wherein he acknowledges that neither the particular "understanding" of the promisor or the promisee "is necessarily the test of the sense to be accepted and enforced by the law," but goes on to say:

"Nevertheless, for two reasons it is usually necessary to inquire what the 'understanding' of each party was; first, because it may appear that both gave the same sense to the words, and thus no conflict will exist . . .; and, secondly, because, if there *is* a conflict, the different senses must be examined. It thus appears that we must discriminate between *enforcing* the private 'understanding' of one party, and *receiving evidence* of such a private 'understanding'." 7 Wigmore, *Evidence* (3d Ed.), § 1971, p. 111.

We are not convinced that the question objected to, and the offer to prove, called for an understanding of the terms of a contract; but even so considering it, we feel that it is unnecessary to decide in this case whether the law in Indiana should be re-examined as to whether we should permit one party to a contract to testify as to his "understanding" of its terms.

Appellant's witness, Mr. Anstrom, was also asked the following questions in his direct examination, which were answered without objection:

"Q Now, directing your attention to what was said at this meeting with regard to services of the Plaintiff was there anything mentioned with respect to his hourly, eh, or with respect to the nature of the charges in this matter?

"A Yes, this was certainly discussed. We wanted to make sure that we were rendered a bill on the first of each month covering all services performed for us in the previous month and certainly including all his expenses.

"Q Was there any mention at all of a retainer in this case?

"A None whatever.

"Q *Was it your understanding* at all that Mr. Adamson would just be paid as he put it 'enough money to keep him going'?

"A *No Sir,* we asked Mr. Adamson to keep records of the time spent on this Helder's matter for us and bill us each month." (Emphasis supplied.)

Thus, the witness freely and without objection by appellee testified to his "understanding" of the terms of this phase of the employment contract, and the refusing to admit subsequently offered testimony of similar substance, if error, was harmless to the appellant.

Finding no reversible error, the judgment is affirmed. Carson, Martin and Prime, JJ., concur.

NOTE.—Reported in 204 N. E. 2d 372.