Rowe, Trustee, *v.* Rand, Receiver.

discovered it after the trial, was no excuse for not having looked for it before.

Judgment affirmed, with costs.

Filed May 28, 1887.

———————◆———————

No. 13,641.

ROWE, TRUSTEE, *v.* RAND, RECEIVER.

PRINCIPAL AND AGENT.—*Trustee.—Style of Bank Account.*—One who is put in possession of property by joint owners, with instructions to sell it upon the best available terms, at his discretion, is an agent, and not a trustee, and his character is not changed by styling himself "trustee," at the suggestion of one of his principals, a banking company, in making deposits with the latter of the proceeds of sales, to distinguish the account from another kept by him as agent.

SAME.— *Joint Principals.— Severance of Interests. — Revocation of Agency.— Banks.—Mutual Release of Claims.*—Where two banks, as principals, appoint an agent to take charge of a matter in which they are jointly interested, who deposits the joint funds in one of the banks, and a severance of the joint interest afterwards occurs, and in a compromise of differences each releases all claims against the other, the agency is thereby revoked, and a claim against the bank holding the deposit by the other principal for a share therein is discharged.

SAME.—*Right of Agent to Maintain Action.*—The right of an agent to bring an action in his own name in certain cases is subordinate to the rights of the principal, who may bring suit himself, and thus suspend or extinguish the right of the agent, unless in particular cases where the latter has a lien or some other vested right.

RELEASE.—*Construction of.—Extrinsic Evidence.*—To enable a court to construe a release from the stand-point occupied by the parties, extrinsic evidence is admissible to explain the circumstances under which it was executed, and the nature of the transaction to which it was designed to apply. The particular purpose for which it was executed ought to be kept in view, and where only general words are used they are to be construed most strongly against the party executing the release.

From the Marion Superior Court.

*H. J. Milligan,* for appellant.

*F. Winter* and *J. M. Winters,* for appellee.

NIBLACK, J.—During the year 1879, the First National Bank of Indianapolis, since distinguished as No. 55 of that name, and the Indiana Banking Company, the name assumed by a firm of private bankers, obtained judgments of foreclosure against the Shaw Carriage Company upon chattel mortgages executed to them respectively upon carriages, buggies and other vehicles, and procured the appointment of William Rowe, the appellant in this cause, as receiver to take charge of the business of that company at a stipulated compensation per week. At a sheriff's sale of a part of the mortgaged property, held in May, 1880, the bank and banking company jointly bid off property to the amount of $6,134.50, and at a subsequent sale, in July following, bid off additional property to the value of $1,400. The bank and banking company left the entire amount of property so bid off by them in the possession of Rowe, with instructions to him to sell it upon the best available terms, at his discretion, with the understanding that the net proceeds were to be divided between those institutions in the proportion which $4,062.39 sustains to $3,512.11. As Rowe realized money from time to time from the sale of the property thus left with him, he, with the knowledge and consent, and at the request, of both institutions, deposited the amount to his own credit, under the name of "William Rowe, trustee," in the banking company's bank. The deposits thus made by him eventually amounted to the aggregate sum of $7,074.58, which did not include the entire proceeds of the property. The first deposit made, as stated by Rowe, was cash realized from a sale of a buggy soon after he took charge of the property. At that time he had an account with the banking company in his individual name, another in his name as "agent," and still another as "receiver." He was, in consequence, advised by a member of that company to place the money to his credit as "trustee," which he did, and continued to do. On this subject, Rowe, as a witness, said: "As I was really an agent in this case, but had another account in the bank,

separate and distinct from this, under that name, it was nec-essary to call it something else, and it was, therefore, called "William Rowe, trustee.'" Notes for some of the property afterwards sold by him were also taken by him in his name as "trustee." On the 10th day of August, 1883, the banking company suspended payment and closed its doors against its creditors, and, in a few days thereafter, by proper proceedings in the court below, Frederick Rand, the appellee here, was appointed a receiver to close up its business. In the meantime the First National Bank of Indianapolis, known as No. 2556 of that name, had been organized as the successor of the national bank hereinabove named, and had succeeded to the available assets and general business of the old bank. At the time of the failure of the banking company, it owed these two national bank organizations the admitted sum of about $168,000, and those organizations made a further claim against it in the sum of $56,000, which was contested. The business and general management of the three banking organizations had become so intermingled and so involved that the further continuance in business of the then newly organized First National Bank, above referred to, required an immediate settlement with and severance from the banking company.

Representatives of the three organizations accordingly met on the 10th day of August, 1883, the day on which the banking company closed its doors, for the purpose of making a settlement and of promoting the proposed severance. After the interchange and mutual acceptance of certain propositions, and the consequent transfer of certain moneys, funds and property, the following agreement in writing was entered into, the said banking company acting through F. A. W. Davis, its cashier:

"INDIANAPOLIS, IND., Aug. 10th, 1883.

"This agreement, made in duplicate by and between the "First National Banks,' Nos. 55 and 2556, and the 'Indiana Banking Company,' certifies that the said parties have ad-

justed and compromised their differences, and said ' Indiana Banking Company' holds no claim against either of said banks, nor does either of said banks hold any claim whatever against said ' Indiana Banking Company;' but this is not to be construed as a release or discharge of any unpaid paper held by said First National Banks, No. 2556 and No. 55, against any individual or individuals who may be members of the ' Indiana Banking Company.'

"F. A. W. DAVIS, Cashier.

" The First National Banks of Indianapolis, No. 55 and No. 2556, by          A. D. LYNCH, President."

On the 27th day of June, 1885, Rowe, designating himself as " trustee," and claiming to be still the owner of and entitled to control the money so deposited by him as " trustee" with the banking company, filed his intervening petition in the court below against Rand as receiver of that company, praying that an allowance might be made in his favor for the amount deposited by him as stated. Rand answered: *First.* In denial. *Second.* Payment. *Third.* Setting up the agreement above set out in release and discharge of the claim so presented.

Issue being joined, there was a trial at special term, and a finding and judgment in favor of Rand as such receiver of the banking company, and an affirmance of the judgment at general term.

The appellant maintains that upon the evidence the finding and judgment ought to have been in his favor, and that, consequently, the court below, at general term, erred in affirming the judgment so rendered. against him at special term.

A trustee is one to whom an estate has been conveyed in trust, and, consequently, the holding of property in trust constitutes a person a trustee. An agent is one who acts for, or in place of, another, denominated the principal, in virtue of power or authority conferred by the latter, to whom

an account must be rendered. In the case of an ordinary agency for the sale or disposition of property, the title to the property, as well as to the proceeds, remains in the principal. Such an agency may be revoked at any time, in the discretion of the principal. It may, also, be in like manner terminated by the renunciation of the agent, he being liable only for the damages which may result to the principal. An agency may also be, and is, revoked by operation of law in certain cases, among which are the bankruptcy of the principal, the extinction of the subject-matter of the agency, the loss of the principal's power over such subject-matter, or the complete execution of the business for which the agency was created; also, where the changed condition becomes such as to produce an incapacity in either party to proceed with the business of the agency. Where a power or authority to act as agents is conferred on two persons, the death of one of them terminates the agency. So, where two persons are jointly appointed agents to take charge of a particular business for a specified term or purpose, and one of them becomes incapacitated before the term is completed or the purpose is accomplished, the other can not proceed alone without the consent of the principal, and hence the agency is thereby in effect revoked. Abbott's and Bouvier's Law Dictionaries, titles "Agent" and "Agency;" 1 Wait Actions and Defences, 289; 1 Parsons Contracts, 39, *et seq.;* Story Agency, sections 38, 42, 474, 499.

The inevitable inference from these legal propositions is, that when two principals jointly appoint an agent to take charge of some matter in which they are jointly interested, and a severance of their joint interest afterwards occurs, the severance revokes the agency.

An agent may sue in his own name: *First.* When the contract is in writing, and is expressly made with him, although he may have been known to act as agent. *Secondly.* When the agent is the only known or ostensible principal, and is, therefore, in contemplation of law, the real contracting party.

*Thirdly.* When, by the usage of trade, he is authorized to act as owner, or as a principal contracting party, notwithstanding his well known position as agent only. But this right of an agent to bring an action, in certain cases, in his own name is subordinate to the rights of the principal, who may, unless in particular cases, where the agent has a lien or some other vested right, bring suit himself, and thus suspend or extinguish the right of the agent.

Applying the general principles thus announced to the facts hereinabove stated, our conclusions are, that Rowe became an agent only, and hence not a trustee, for the sale of the property left with him by the banks; that he acquired no lien either upon the property or its proceeds which would have prevented the national banks, or either one of them, as the situation might have authorized at the time, from revoking Rowe's authority as their agent, and demanding an accounting from the banking company as to the money deposited with it by him, or from demanding such an accounting without revoking Rowe's agency; that, consequently, the money so deposited constituted a fund upon which the national banks might have based a claim against the banking company when the agreement was mutually entered into on the 10th day of August, 1883, and that, if, in fact, all claim against that fund was released by the agreement of that date, the agency of Rowe in all matters concerning the fund was thereby revoked, leaving him in a position to demand only an accounting for his services and expenses.

A release ought to be construed from the stand-point which the parties occupied at the time of its execution.

To enable a court to so construe a release, extrinsic evidence is admissible to explain the circumstances under which it was executed, and the nature of the transaction to which it was designed to apply, without adding to, or subtracting anything from, the words used by the parties to the instrument. 1 Greenl. Ev., section 277; *Reed* v. *Insurance Co.,* 95 U. S. 23; 7 Wait Actions and Defences, 464.

The particular purpose for which a release was executed ought always to be kept in view, and where only general words are used they are to be construed most strongly against the party executing the release. *Seymour* v. *Butler,* 8 Iowa, 304; *Rich* v. *Lord,* 18 Pickering, 322; *Fazakerly* v. *McKnight,* 88 Eng. Com. Law, 794; *Solly* v. *Forbes,* 4 Moore, 448; *Lyall* v. *Edwards,* 6 Hurlstone & Norman, 336; *Jackson* v. *Stackhouse,* 1 Cowen, 122.

The evidence tended to prove that the list of claims formally presented by the national banks against the banking company did not embrace any part of the money deposited and since demanded by Rowe as trustee, but it tended further to show that the purpose the parties had in view, in ultimately entering into the agreement hereinabove set out, was to mutually release and discharge each other from all claims and demands of every nature and kind, and to complete, in this way, an entire severance of interests between the national banks on the one side and the banking company on the other.

· The finding of the court below at special term was, consequently, sustained by the evidence.

The judgment at general term is affirmed, with costs.

