REAGAN ET AL. *v.* DUGAN.

[No. 16,686. Filed May 26, 1942. Rehearing denied October 21, 1942. Petition to recall mandate denied December 22, 1942.]

*Neal & Williams* and *Harvey D. Trimble,* all of Indianapolis, for appellants.

*Albert Stump, N. E. Elliott, Leo X. Smith,* and *J. R. Cauble,* all of Indianapolis, and *Christian & Waltz,* of Noblesville, for appellee.

BLESSING, J.—The appellee, Dorothy S. Dugan, instituted this action in the Hamilton Circuit Court to quiet title to certain real estate located in Hamilton County in the State of Indiana.

Appellee's complaint was in two paragraphs, but the only evidence offered was in support of the first paragraph. This paragraph alleged that appellee was the owner of and entitled to the immediate possession of certain real estate; and that the appellants (defendants below) asserted some right, title or interest in and to the said real estate, which said claims were without right and unfounded. To this complaint were filed the separate and several answers in general denial of the appellants, and appellant Donald B. Reagan, administrator *de bonis non* of the estate of Clara B. Reagan, deceased, filed his cross-complaint. The issues were closed by denials to the cross-complaint of Donald Reagan. The cross-complaint of Donald B. Reagan, administrator, proceeded upon the theory that plaintiff's title to the real estate involved was secured by redeeming the same as an owner from a sale in the foreclosure of a mortgage, and as a result of such redemption, the sale was vacated, subjecting said real estate to a judgment lien which was an asset of the estate of which the cross-complainant was administrator.

The trial court, pursuant to a written request, made

a special finding of facts and stated conclusions of law thereon. Judgment was then rendered in favor of appellee, quieting her title to the said real estate.

Exceptions were duly taken to each conclusion of law, and all the appellants, except Edwin A. Byrkit and Nellie Byrkit, filed separate and several motions for new trial. The appellants assign as error the overruling of the motions for new trial, and challenge each of the court's conclusions of law, there being seven in number.

The grounds set forth in the motion for new trial are:

1. The finding of the court is not sustained by sufficient evidence.

2. The finding of the court is contrary to law.

3. Error in admitting certain evidence.

From the stipulation of facts, it appears that the real estate involved was conveyed by warranty deed to one Edwin A. Byrkit in 1925; that Edwin A. Byrkit and his wife, Nellie Byrkit, executed a mortgage on said real estate to Clara B. Reagan, to secure a note for $8,600; that said mortgage was assigned by said Clara B. Reagan to the Citizens State Bank of Noblesville, Indiana, to collaterally secure an indebtedness in the sum of $4,990.94; that in February, 1933, the said Citizens State Bank filed its complaint to foreclose said mortgage, joining as parties defendant the said Edwin and Nellie Byrkit and Thomas J. Dugan; that while said action was pending the said Citizens State Bank became insolvent, and its assets were taken into the custody of the Department of Financial Institutions of the State of Indiana and L. V. Wright was appointed special representative in charge thereof, and was substituted as plaintiff in the said foreclosure proceedings; and that after the death of Clara B. Reagan, Charles

G. Reagan, as administrator of the estate of the said Clara B. Reagan, was, by order of the court, joined as a party defendant and he filed answer in said cause.

It was further stipulated that on July 16, 1936, a judgment was entered against Edwin Byrkit on his note in the sum of $5,745.85 and interest thereon; and it was adjudged that the equity of redemption of Edwin Byrkit, Nellie Byrkit, and Thomas J. Dugan, in said real estate be foreclosed, and that the real estate be sold to pay and satisfy said judgment; that the court further found that the said Clara B. Reagan owed the said Citizens State Bank on her note the sum of $3,358.76, and that the overplus received from the sale of the real estate, after paying the costs of the action and the amount due the said bank, be paid to the administrator of the estate of Clara B. Reagan; that if the proceeds from the sale of the premises should be insufficient to satisfy all the claim, then the property of Edwin Byrkit would be subject to execution; that on the 19th day of September, 1936, the said mortgaged premises were offered for sale, and the said L. V. Wright, special representative of the Department of Financial Institutions, purchased the same for $3,800.00, receiving his certificate of purchase on the same day; that the money received from the sale was applied to the judgment; and that thereafter the said L. V. Wright assigned, by order of court, all right, title and interest in the said judgment over $3,800.00 and interest thereon for a year, to the said Charles G. Reagan, administrator of the estate of Clara B. Reagan, deceased.

The evidence discloses the fact that on September 18, 1937, Edwin A. Byrkit and Nellie Byrkit executed the following instrument, which was recorded in the Lis Pendens Record of the Hamilton County clerk's office:

"FOR AND IN CONSIDERATION of the sum
of One Dollar and of other good and valuable con-
siderations, receipt of all of which is hereby ac-
knowledged, by us, we the undersigned Edwin A.
Byrkit, and Nellie J. Byrkit, his wife, do hereby
assign all our right, title and interest in and to the
farm in Hamilton County, known as the 'Probst
Place' consisting of about twenty acres and de-
scribed as follows:

A part of the Northwest quarter of section
24, township 18 north, range 4 east, using the
north line of the northeast quarter of said
section 24 as a true east and west line and
beginning on said line 1068 feet west of the
northwest corner of said section 24, thence
south six minutes east and parallel with the
east line of said quarter section 1754.43 feet,
thence north 80 degrees 26 minutes west 657.43
feet to the center of Indianapolis and Nobles-
ville public highway, thence north 9 degrees
34 minutes east 1668.34 feet to the north line
of said quarter section, thence east 368 feet
to the place of beginning containing 20 acres,
more or less, together with all buildings
thereon.

and all our right, title and interest in any redemp-
tion or sale under foreclosure and the right to buy
same in at such sale and-or to redeem same after
and from said sale, and hereby transfer all of the
foregoing rights and assign same to Dorothy S.
Dugan of Indianapolis, Indiana, and consent to her
purchasing said property from any person, firm or
corporation holding the title thereto, and hereby
relinquish any rights which we may have therein,
and agree to her substitution in our name, stead
and place.

"IN WITNESS WHEREOF, we have hereunto
set our hands and seals at Indianapolis, Indiana,
this 18th day of September, 1937.

"Edwin A. Byrkit
Nellie J. Byrkit"

Also, on September 18, 1937, an affidavit and state-
ment in redemption was filed in the clerk's office. This

affidavit was signed "Dorothy S. Dugan" by Thomas J. Dugan, and after referring to the sheriff's certificate of sale and describing the real estate, recites:

"That said real estate was redeemed from such sale by Dorothy S. Dugan, claiming the right to redemption as sole assignee of said right which redemption more fully appears, reference being here made to page 436 of Redemption Record No. One of said County, and that said redemption of said Real Estate is the last one appearing of record.

"And the undersigned say that she desires to redeem the Real Estate above described from the sale aforesaid, as well as from any subsequent redemptions thereof, basing her right to so redeem upon the following facts: Assignment of all right, title and interest in Redemption or Sale under foreclosure, and all right to buy or redeem, as appears in assignment recorded in Lis Pendens Record 4 at page 231 of said record now on file in the Clerk's office of the Hamilton Circuit Court."

It is admitted that on September 18, 1937, at the time of filing of the affidavit of redemption, Dr. Dugan paid into the clerk's office $4,200 on behalf of Dorothy S. Dugan, and that the clerk issued a receipt for this sum. The receipt recited the title of the foreclosure suit and the docket number, and stated that the sum of $4,200 had been received of Thomas J. Dugan, "to be applied on redemption on the foreclosure of the sheriff's certificate of sale on decree."

The clerk's certificate of redemption was recorded in his office on September 22, 1937. This certificate, omitting the caption and legal description of the real estate, is as follows:

"I, Chesley E. Baldock, Clerk of the Circuit Court, within and for the County and State aforesaid, do hereby certify as follows: That as shown by Sheriff's Certificate of Sale on Decree No. 4528 Recorded in Lis Pendens Record No. 4, page 231 of

said County, certain Real Estate was sold by said Sheriff, by virtue of process issued from the Circuit Court of Hamilton County, Indiana, in a case wherein Citizens State Bank, L. V. Wright, Special Representative of the Department of Financial Institutions of the State of Indiana, plaintiff, and Edwin A. Byrkit, Nellie Byrkit and Thomas J. Dugan, defendant—; That Dorothy S. Dugan claiming to be the assignee of the right in redemption of Edwin A. Byrkit, and Nellie Byrkit, defendants herein has this day paid me, as Clerk aforesaid, the sum of Forty One Hundred & Four Dollars and ——— cents, tendered in redemption of such Real Estate (hereinafter described) from said sale (as well as from any redemption thereof heretofore made), and has also paid the further sum of One dollars and ——— cents, costs of making such redemption. The Real Estate sold as aforesaid and so redeemed being described as follows: (Here follows description of real estate.)

"And the said Dorothy S. Dugan basing her right to redeem the same upon the certain statements, as evidenced by affidavit filed, and which statements in substance are as follows: Assignment of all right title and interest in Redemption or sale under foreclosure, and all right to buy or redeem, as appears in assignment recorded in Lis Pendens Record 4 at page 231 of said record now on file in the Clerk's office of the Hamilton Circuit Court.

"AND I FURTHER CERTIFY, That the sum so paid, as aforesaid in redemption, is the amount required at this date to redeem said Real Estate above described from such sale, as well as from redemption thereof prior hereto including interest on the purchase price at 8% from date of sale.

"WITNESS, my hand and the seal of said Court, this 22nd day of Sept. 1937.

"Chesley E. Baldock Clerk
"Circuit Court of Hamilton County.

"I CERTIFY the foregoing to be a true copy of the Certificate of Redemption by me issued, and duly recorded this 22nd day of Sept. 1937.

"Chesley E. Baldock Clerk
"Circuit Court of Hamilton County."

On the same day the record discloses that the holder of the sheriff's certificate of sale receipted for the sum of $4,104.00, and on October 16th, the clerk returned to the father of appellee the sum of $96.00, being the remainder of the $4,200.00 paid to the clerk on September 18th. On October 19, 1937, the sheriff executed a deed to the real estate involved to Dorothy Dugan.

The certificate of purchase issued to the special representative of the Department of Financial Institutions was not assigned to appellee by the holder thereof; nor was the same delivered to her. It was in the possession of the purchaser at the time he received the money from the clerk, but was afterward delivered to the sheriff by the said special representative or by the clerk of the Hamilton Circuit Court.

Other evidence, pertinent to the assigned errors, was admitted, much of it over objection of appellants, to show that it was the intention of appellee to secure title to the land through the ownership of the certificate of sale held by the Department of Financial Institutions, and that it was not her intention to redeem the land from the foreclosure sale.

The question, therefore, to be determined in this case is, did the appellee, Dorothy Dugan, redeem the real estate involved in this case from the sheriff's sale, or did she acquire the certificate issued by the sheriff at the time of the sale on the foreclosure proceedings?

Appellee contends that she could not redeem the property because at the time that she paid the $4,200 to the clerk, she possessed no title, either equitable or legal, to the real estate.

Section 2-4001, Burns' 1933 provides that real estate may be redeemed at any time within one year from the date of sale, by the owner thereof, or by his executor

or administrator, or by his heirs or devisees, or by any one holding either the legal or equitable title.

It seems to be conceded by both appellee and appellants that the only title which appellee held to the property, if any, was obtained through the instrument, hereinbefore set out, executed to her by Edwin and Nellie Byrkit. Appellee contends that no words of conveyance were used in this instrument and that the sole purpose of its execution was to assure appellee that the Byrkits would not redeem the said real estate, and that if they did so redeem, appellee's money would be returned to her. This instrument is very similar to the form of quitclaim deed set out in § 56-116, Burns' 1933, which is as follows:

"Any conveyance of lands worded in substance as follows: 'A B quitclaims to C D [here describe the premises], for the sum of [here insert the consideration],' the said conveyance being duly signed, sealed and acknowledged by the grantor, shall be deemed to be a good and sufficient conveyance in quitclaim to the grantee, his heirs and assigns."

It was signed, sealed and acknowledged as is required by said section of the statute. However, instead of using the word "quitclaim" the word "assign" is used in that part of the instrument wherein the real estate and buildings are the subject-matter. The statute does not require that exact words be used, but provides that any conveyance of lands worded substantially the same as the form therein set out is a good conveyance in quitclaim.

It has been held by courts of many states, including our own, that the words, "assign" and "transfer" are sufficient to convey title. In the case of *Gambril and Another* v. *Doe on the Demise of Rose* (1846), 8 Blackf. 140, in which the words "mort-

gage, assign over and transfer" were used, the Supreme Court said that no particular form of words is necessary to effect a conveyance of real estate; and that any words which denote the intention of the parties to a deed to transfer the title from one to the other are sufficient to make a conveyance. The court further said that an assignment is a transfer of real or personal property, and may be of lands in fee-simple.

In the case of *Harlowe* v. *Hudgins* (1892), 84 Tex. 107, 111, 19 S. W. 364, the court quoted the following passage from the case of *Hutchins* v. *Carleton*, 19 N. H. 510: " ' "Assign and make over" are as effectual when a good consideration is expressed as "quit my claim," or many other forms that have been sanctioned as sufficient to raise a use or pass an estate.' "

The court, in the case of *Sanders* v. *Ransom, Admx., etc.* (1896), 37 Fla. 457, 461, 20 So. 530, held that no particular form of words is necessary to effect a valid conveyance of lands, and said: "The words 'transfer and assign' are not the usual operative words of a conveyance of real estate, but still we think sufficient to transfer the title."

The legal signification of the word "assign" is to transfer; to set over to another. We find nothing in our search to indicate that the use of the term "assign" as an operative word of conveyance is not sufficient to meet the requirements of our statute for a quitclaim deed. See Corpus Juris, volume 5, page 836 and notes. The appellee relies on the case of *Hummelman* v. *Mounts* (1882), 87 Ind. 179, but the facts in that case are so clearly distinguishable from the facts in the case at bar, that further comment appears unnecessary. We conclude that the instrument executed by the Byrkits conveyed all the right, title and interest which the Byrkits had in the real estate in-

volved, to appellee and being the owner of said real estate she was possessed of the statutory right to redeem the real estate from the foreclosure sale.

Appellee earnestly contends that the Byrkits did not intend to convey the land to her and that it was not her purpose to acquire either the legal or equitable title to the real estate set out in the assignment. It is to be noted that this instrument was prepared by appellee's attorney, and it is difficult to understand the inclusion of the land and buildings and the legal description of the property in the assignment if it were not intended that they should be transferred. The instrument plainly shows that the real estate was intended to be a part of the transfer, and no ambiguity exists such as to admit of extrinsic evidence to explain its purport. Other than the assignment of the right to redeem, which appellee now claims established no right in her, the provisions in the last part of the instrument secured nothing more to appellee than a waiver and relinquishment of any remaining right of the Byrkits. The transfer, alone, of the title to the land did not divest the Byrkits of the right to purchase the certificate of sale.

Appellee further contends that the affidavit and statement in redemption, which was admittedly prepared by the clerk, contains language which clearly shows that she did not attempt or intend to redeem the real estate as the owner thereof. While the language in the affidavit and statement, which we have heretofore set out, supports appellee's contention, it is to be noted that in the affidavit reference is made to the assignment of the Byrkits in its entirety. It is significant that appellee is now also repudiating the effect of this same language as indicative of her intention to redeem as assignee of the right of redemption.

Further evidence was offered to show that the appel-
lee was not claiming to redeem as owner of the prop-
erty; that it was her belief that she was to secure title
through the ownership of the certificate of purchase
and that she believed she would acquire a clear title to
the real estate by securing such certificate. It is im-
portant to note at this point that the record is silent
on any attempt by appellee or her agents to secure the
assignment of said certificate from the holder thereof,
nor is there any evidence to indicate that such an
effort would have failed, if attempted. Appellee bases
her right to the conveyance from the sheriff, on the
fact that she paid the required amount to redeem into
the hands of the clerk, and upon acceptance by the
certificate holder, she became the equitable assignee
of the certificate of purchase. This claim is made on
the assumption that she had no legal right under the
provisions of the statute to redeem the property in
question. If this were a contest between the certificate
holder and appellee and she had no statutory right of
redemption, her claim would be tenable, but this is not
such a contest.

As hereinbefore indicated the intention of appellee
to secure a transfer of the property from the Byrkits
by the instrument to which she secured their signatures
is apparent, and whether the word "assign" was suf-
ficient to constitute a valid grant, it was undoubtedly
intended to be sufficient by appellee's attorney; other-
wise the first part of the instrument is a nullity.

"One who offers or accepts a contract of a certain
character is bound by its terms as properly inter-
preted, . . ." 12 Am. Jur. Contracts, § 20, p.
517. See also *Clanin* v. *Esterly Harvesting Ma-
chinery Company* (1889), 118 Ind. 372, 21 N.
E. 35.

The intention of the parties which will control in interpreting the meaning of a contract entered into between them is not the secret design which may dwell in a party's mind, and as to the existence of which he alone can speak, but that intention which was either expressly declared by the parties, or which flows, patent to all, from the nature and character of the act—the clear purpose to be served. *National Bank of Catasauqua v. North* (1894), 160 Pa. 303, 28 A. 694. The extrinsic evidence produced by appellee as to her intentions, her belief and her conclusion as to the manner in which she acquired ownership of the certificate did not alter, render ineffective or nullify the conveyance executed by the Byrkits.

When appellee became the owner of the property she fully complied with the provisions of § 2-4001, Burns' 1933, which provides for the manner of redemption by the owner or one claiming under him. Appellee was not the owner of the property at the time of the foreclosure sale and she was required to file with the clerk her affidavit showing the facts which entitled her to redeem. This she did. She then paid to the clerk, for the use of the person holding the certificate of sale on foreclosure, the full amount necessary to redeem the land. All of this was done within the statutory period for redemption. When the redemption was completed the certificate of sale issued by the sheriff at the time of the foreclosure sale became a nullity, and the deed executed by the sheriff on the certificate subsequent to the redemption was likewise a nullity and conveyed no title.

There being a redemption of the real estate involved, by the appellee as the owner thereof, the sale on foreclosure by the sheriff was vacated, and said real estate

is subject to resale to satisfy the deficiency judgment held by the Reagan estate.

The evidence being insufficient to support the finding of the trial court to the effect that appellee held neither the legal nor equitable title to the real estate at the time she paid the redemption money into court, the conclusion that she was the equitable assignee of the certificate of purchase was erroneous and a reversal of this case is required.

In as much as the documentary evidence is without dispute and determinative of the rights of the parties hereto, there is no necessity for a new trial of this cause. The judgment is reversed with instructions to the trial court to restate the conclusions of law in conformity with this opinion and to render judgment in favor of appellants.

NOTE.—Reported in 41 N. E. (2d) 841.