Thomas ROSE and Grace Rose, Defendants-Appellants,

v.

Dale ROSE, Plaintiff-Appellee.

No. 3–778A171.

Court of Appeals of Indiana, Third District.

Feb. 1, 1979.

Rehearing Denied March 9, 1979.

and no/100 Dollars ($13,000.00) . . . Remise, Release and Forever Discharge Thomas Rose and Grace Rose . . . their . . . agents, . . . and all other persons, firms and corporations whomsoever of and from any and all actions, claims and demands . . . arising out of the . . . event which happened on or about the 6th day of August, 1975 . . . in full settlement and satisfaction of all aforesaid claims and demands whatsoever . . . [having] fully informed . . . themselves of its contents and meaning and . . . with full knowledge thereof."

Thereafter Dale filed this suit, ostensively to procure the coverage provided by appellants' second liability carrier. Based on operation of the executed release appellants filed a motion for summary judgment. The trial court denied the motion stating in its order that whether the parties intended such release to be in full satisfaction of a claim was a question of fact for the jury. The court relied upon the decision reached in *Wecker v. Kilmer* (1973), 260 Ind. 198, 294 N.E.2d 132. The court further indicated that but for the holding of *Wecker* it would have granted summary judgment on the ground that clear terms of the release extinguished any action on the part of Dale Rose against the defendants.

*Wecker*, recently discussed and followed by this Court in *Bellew v. Byers* (1978), Ind.App., 382 N.E.2d 1318, involved a factual situation which is distinguishable from the case at bar. Two distinct tortfeasors were involved; the issue being the effect of a release in favor of the initial tortfeasor upon a subsequent tortfeasor. Unlike the *Wecker* decision there is no factual dispute here as to whom the release was intended to apply. The post-release claim was asserted against the party to whom the release was given. Appellants' second insurance carrier is neither a subsequent or a joint tortfeasor (as in *Bellew v. Byers, supra*). Rather, any liability of Vernon Casualty is vicarious in nature, dependent upon the liability of the named appellants. That liability was released in a clear and unambiguous document.

William J. Reinke and James E. McMahon, Thornburg, McGill, Deahl, Harman, Carey & Murray, South Bend, for defendants-appellants.

Wesley G. Kipp, LaPorte, Richard F. Joyce, Kizer, Neu, Joyce & Rockaway, Plymouth, for plaintiff-appellee.

HOFFMAN, Judge.

This is an interlocutory appeal in which Thomas and Grace Rose, defendants-appellants herein, appeal from denial of a motion for summary judgment and a motion in limine.

The trial court certified the following issues on appeal: whether there exists a material question of fact precluding summary judgment and whether parol evidence should be admitted to explain appellee's intent in executing a release. Disposition of the first issue herein renders the second issue moot.

Plaintiff-appellee Dale Rose is the son of appellants. Dale commenced this action to recover for personal injuries arising out of an accident which occurred on his parents' farm on August 6, 1975. Appellants have liability policies with two insurance carriers: Aetna Insurance Company of the Midwest and Vernon Fire and Casualty Company.

On December 15, 1975 and prior to the commencement of this action, Dale and his wife signed a release with Aetna. The language of the release provides that ". . . [the claimants] for and in consideration of the sum of Thirteen Thousand

Appellee may have validly reserved a claim in a reservation clause contained in the release as in *Cooper v. Robert Hall Clothes, Inc.* (1978), Ind.App., 375 N.E.2d 1142. However, a mere private reservation has no effect upon operation of the release, as it is the mutual intent of the parties that must control. *Lazarrus v. Employers Mut. Cas. Co.* (1977), Ind.App., 364 N.E.2d 140. As in *Lazarrus*, the contention by Dale Rose that a factual question exists as to *his* intent in signing the release is futile.

> *See:* *Western and Southern Life Ins. Co. v. Vale* (1938), 213 Ind. 601, 12 N.E.2d 350;
>
> *Robison v. Fickle* (1976), Ind.App., 340 N.E.2d 824;
>
> *Reagan v. Dugan* (1942), 112 Ind.App. 479, 41 N.E.2d 841.

Because a valid release operates as surrender of a claim for relief and claimant's right to prosecute for recovery, *Lazarrus, supra*, and because *Wecker* is inapplicable where a single tortfeasor is involved, there exists no genuine issue of material fact. Summary judgment should have been granted.

Judgment reversed and cause remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

GARRARD, P. J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I dissent. The rationale of *Wecker v. Kilmer* (1973), 260 Ind. 198, 294 N.E.2d 132 does apply to this appeal. The applicability of *Wecker* does not depend upon the presence or absence of a subsequent tortfeasor or upon who the release was intended to apply as the majority opinion reasons. Whether *Wecker* applies or not depends on the circumstances of the parties and the positions that they occupied at the time the release is executed. If those circumstances and relative positions of the parties require an explanation as to full satisfaction and intent when the release was executed, the *Wecker* rationale is applicable. Full satisfaction and intent of the parties are factual determinations which preclude the granting of summary judgment.

Justice Hunter writing for the Indiana Supreme Court in *Wecker*, an opinion in which all justices concurred, stated that "The actual form or title of the release is immaterial and parol evidence should be permitted to determine the intent of the parties." As to the relative positions of the parties, he quoted from *Rowe v. Rand* (1887), 111 Ind. 206, at 211, 12 N.E. 377, at 380 the following:

> " 'A release ought to be construed from the stand-point which the parties occupied at the time of its execution.
>
> " 'To enable a court to so construe a release, extrinsic evidence is admissible to explain the circumstances under which it was executed, and the nature of the transaction to which it was designed to apply . . .' "

From the standpoint which the parties occupied at the time the release was signed, it appears that Dale Rose signed a release with one of two insurance carriers who insured his parents, Thomas Rose and Grace Rose, against liability form personal injuries on their farm. Whether Dale Rose signed the release in order to receive the policy limit of the one insurance carrier, Aetna Insurance Company of the Midwest, in lieu of full satisfaction for his personal injuries, or whether he signed the release with the intent that a second payment from the second insurance carrier, Vernon Fire and Casualty Company, would be forthcoming to complete full satisfaction for his injury, can only be shown by the giving of testimony and a factual determination by the trier of fact. If on the other hand, Dale Rose and Aetna Insurance Company of the Midwest intended that the payment of $13,000.00 for the release would be full satisfaction of Dale Rose's personal injury claim and that Aetna Insurance Company of the Midwest would subrogate against the other insurance carrier, Vernon Fire and Casualty Company, for its share of the liability, this too would be a factual determination for the trier of fact.

Many releases are standard printed forms which do not include an attached memorandum as to the actual understanding of the parties when they are executed. This is especially true when the language of the release appears to be all inclusive on the question of intent. No reference is made to the relative position or circumstances of the parties other than the existence of injury and liability. No reference is made in the release to a second insurance carrier, Vernon Fire and Casualty Company. If less than full satisfaction has been realized by Dale Rose for his personal injury by signing the release, the second insurance carrier, Vernon Fire and Casualty Company may have avoided considerable liability under the reasoning of the majority opinion. Did Aetna Insurance Company of the Midwest intend to protect only itself from further liability or to protect Dale Rose's parents and the Vernon Fire and Casualty Company as well?

In *Wecker*, Justice Hunter stressed that "Two factors should be controlling in determining the effect of an agreement purporting to operate as a release:

"(1) Whether the injured party has received full satisfaction; and

"(2) Whether the parties *intended* that the release be in full satisfaction of the injured party's claim, . . ."

294 N.E.2d at 135. Whether you have successive tortfeasors is not important to the application of the *Wecker* rationale. The circumstances of the parties here makes one insurance carrier the possible third party beneficiary of the action taken by Dale Rose and Aetna Insurance Company of the Midwest even though this result was not intended by either party to the release. Full satisfaction of the personal injury claim by payment and execution of the release may not have been intended by either party. As stated in *Wecker*:

" 'The intent of the parties is the controlling factor in resolving the question of

the rights of a third party beneficiary: such determination must be established from the manifestations of the parties as exhibited by the terms of the written [instrument] *and testimony related thereto.*' (our emphasis) *Loper v. Standard Oil Company* (1965), 138 Ind.App. 84, 90, 211 N.E.2d 797, 801."

294 N.E.2d at 135.

In *Wecker*, Justice Hunter concluded: "It is therefore clear that the above quoted release, standing alone, does *not* bar the claim asserted by plaintiff against the defendant in this litigation. The controlling factors are whether the plaintiff in fact received full satisfaction for his injuries and whether the parties to the release intended it to be in full satisfaction, both of which require a factual determination beyond the face of the instrument."

The refusal of the trial court to grant summary judgment and the motion in limine was correct, and its judgment should be affirmed.[1]

---

1. Refusal to grant a motion in limine can never be reversible error on appeal. *See Lagenour v. State* (1978), Ind., 376 N.E.2d 475.