**John Carlie WILSON and Maxine Wilson, Defendant-Appellants,**

v.

**The RIPLEY COUNTY BANK, Plaintiff-Appellee.**

**No. 1–583A152.**

Court of Appeals of Indiana, First District.

April 25, 1984.

Rehearing Denied May 31, 1984.

---

Gary K. Kemper, Jenner & Kemper, Madison, for defendants-appellants.

Gay & McCombs, Versailles, for plaintiff-appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Defendant-appellants, John Carlie Wilson and Maxine Wilson, husband and wife, (the Wilsons) appeal an adverse summary judgment in a mortgage foreclosure action granted by the Ripley Circuit Court in favor of The Ripley County Bank (the Bank).

We affirm.

## STATEMENT OF THE FACTS

The facts, generated by material submitted supporting and opposing summary judgment, are largely undisputed. On June 10, 1976, the Wilsons executed for consideration a note to the Bank in the amount of $10,000.00, secured by a mortgage on certain real estate. The mortgage contained a provision:

"This mortgage shall also secure any indebtedness of the mortgagors or either of them, to the mortgagee, now existing or hereafter incurred until said debts are fully paid and satisfied."

Thereafter the Wilsons executed four additional notes, hereafter referred to as future advance notes, as follows: October 8, 1979, $6401.52, secured by a car; May 19, 1980, $3500.00; September 1, 1980, $1400.00; and September 2, 1980, $800.00. On December 8, 1980, the Wilsons filed a voluntary petition in bankruptcy in District Court, the Southern District of Indiana. In their schedules, the Wilsons listed the October 8, 1979 debt as secured only by the car and the other three future advance notes as unsecured. The June 10, 1976 note was listed as secured by a real estate mortgage, and it was stated that "debtors will reaffirm this debt". No mention was made of the future advance clause.

Notice was given to the Bank of the first meeting of creditors on January 7, 1981, and stated, "do not file claims at this time. The above entitled cases have been designated as probably no asset cases. You will be notified at a later date of the time within which to file claims if sufficient funds are recovered for judgment of dividends to creditors". The Bank filed no claim and made no appearance in the bankruptcy. No further notice was sent, and on January 26, 1982, the Wilsons received a discharge. The real estate subject to the mortgage was abandoned in the bankruptcy proceedings.

Thereafter, on April 1, 1982 the Bank filed suit on all five notes and to foreclose the mortgage, alleging that the mortgage was security for all notes, including the future advance notes, and that a total of $17,866.85 was due. The parties agree that the June 10, 1976 note is not in default, but the future advance notes are. In their motion for summary judgment and the evidentiary material supporting it, the Wilsons claim that the future advance notes were unsecured; that the Bank did not notify them of its intention to consider the notes as secured by the mortgage; they did not intend that the future advance notes be secured by the mortgage; and that those

four notes were discharged in the bankruptcy. The trial court denied Wilson's motion for summary judgment but granted that of the Bank.

## ISSUES

The Wilsons present the following issues on appeal:

I.   The judgment is contrary to law in that any lien against the real property of the defendants, created as a result of the debts attached to plaintiff's complaint as Exhibits C, D, E, and F, has been extinguished by virtue of the plaintiff's failure to take some action to protect its lien in the bankruptcy court and by the defendants' discharge in bankruptcy.

II.  The judgment is contrary to law in that the debts evidenced in Exhibits C, D, E, and F were not secured by a mortgage on the defendants' real property.

III. The judgment is contrary to law in that a material issue of fact exists as to whether the parties intended the debts evidenced in Exhibits C, D, E, and F to be secured by a mortgage on the defendants' real property, such issue thereby rendering summary judgment improper.

## DISCUSSION AND DECISION

*Issue I: Res judicata*

▆▆▆ The Wilsons concede that a discharge in bankruptcy does not prevent a secured creditor from enforcing a valid mortgage lien on the mortgaged premises to the extent of the lien. *Blake v. First Crown Financial Corp.,* (1983) Ind.App., 443 N.E.2d 871; 8B C.J.S. *Bankruptcy* 582(2) (1962). Wilsons further concede that generally in Indiana, open ended provisions in a mortgage which provide that the mortgage is security for future advances are valid. *Sparrenberger v. National City Bank of Evansville,* 272 F.2d 696 (7th Cir. 1959); *Creech v. LaPorte Production*

*Credit Assn.,* (1981) Ind.App., 419 N.E.2d 1008; *Schmidt v. Zahrndt,* (1897) 148 Ind. 447, 47 N.E. 335; *Bowen v. Ratcliff,* (1889) 140 Ind. 393, 39 N.E. 860; *New v. Sailors,* (1888) 114 Ind. 407, 16 N.E. 609; *Brinkmeyer v. Browneller,* (1876) 55 Ind. 487. It is stated in 4(B) Collier, *Bankruptcy,* Sec. 70.55 at 645 (1978) that such future advance provisions are even valid as against a trustee.

The Wilsons' argument concerning the above issue, their principal one, proceeds thusly. In their schedule of claims, they listed the reaffirmed June 10, 1976 note as secured by the mortgage. They listed the future advance notes as unsecured in the schedule. The Bank, even though it had notice, made no claim or objection and did not challenge Wilsons' assertion that the future advance notes were unsecured. Based upon this bankruptcy court record, a general discharge was granted. Therefore, Wilsons argue, all future advance notes are discharged and cannot later be subject to the Bank's claim. Furthermore, the June 10, 1976 is not in default and the Bank has no cause of action. The Wilsons claim that the action of the bankruptcy court in granting a discharge, general in nature, in which the schedule characterized the future advance notes as unsecured, is res judicata to the issue of whether the future advance notes are secured by the mortgage. They argue that the Bank, after notice, was bound to enter the bankruptcy court and make its rights known by filing a claim or disputing the discharge. Since it did neither, it is bound by the decision of the bankruptcy court.

Wilsons rely heavily upon *Lawrence Tractor Company v. Gregory,* 705 F.2d 1118 (9th Cir.1983). *Gregory* held that a state court money judgment won by Lawrence in an action against Gregory for embezzlement was dischargeable. The money judgment was considered an unsecured claim.

On November 9, 1979, Gregory filed his bankruptcy petition. An "Order for Meeting of Creditors", announcing a December 17th meeting, was served on Lawrence.

The order also stated that a confirmation hearing of Gregory's plan would be held the same day. The order explained that the plan of arrangement divided creditors into 7 categories, of which category 6 was unsecured. The plan did not propose any payment whatsoever of the unsecured creditors. The creditors' meeting and the confirmation hearing were held as scheduled and the plan confirmed, but Lawrence did not attend and object. In March, 1980 Lawrence filed its "Complaint to Determine the Dischargeability of the Debt" alleging the debt was not dischargeable. The court held that Lawrence could not at that point challenge the plan:

> "The order confirming the plan became final. Lawrence's failure to raise this objection at the confirmation hearing or to appeal from the order of confirmation should preclude its attack on the plan or any provision therein as illegal in a subsequent proceeding."

*Gregory, supra*, at 1121.

■ Generally, the granting of a discharge is an adjudication that cannot be impeached collaterally. 1A Collier on *Bankruptcy* 15.02 at 1495 (1978). However, the certificate of discharge is, as here, normally silent as to the particular liabilities affected, and it is the general rule that the proper forum to determine whether a discharge releases a particular debt is the court in which proceedings are later instituted to collect it. 1A Collier, *Bankruptcy*, Sec. 17.28 at 1727 (1978). The bankruptcy court merely determines the

right of discharge, leaving the particular effect thereof to the non-bankruptcy forum. A creditor, if he wishes, may abstain from participating in the bankruptcy proceedings, and the fact that the creditor is discharged will not operate to his prejudice if the claim is in fact non-dischargeable and he can still enforce it in another forum. 1A Collier, *Bankruptcy*, Sec. 17.28; 8 Remington, *Bankruptcy*, Sec. 3239 at 68 (1955).

■ The only purpose in filing a claim is for the creditor to receive a distributive share of the estate. Ordinarily, a secured creditor will refrain from proving his claim either where he feels amply secured or where he anticipates so low a dividend that participation in the bankruptcy proceedings offers no inducement to him. However, if a creditor files a claim it invokes the jurisdiction of the bankruptcy court. 3 Collier, *Bankruptcy*, Sec. 57.20(3) at 335 (1978). It has been held that a bankruptcy court's jurisdiction is summary in nature, and in a summary proceedings, the court cannot determine the rights of adverse claimants.[1] However, if the claimant consents to summary jurisdiction by filing a proceeding or appearing and litigating a claim, the bankruptcy court may proceed to render a judgment on the merits, and such decision is res judicata. *Katchen v. Landy*, (1966) 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391; *Martin v. Martin*, (1970) 2 Cal.3d 752, 87 Cal.Rptr. 526, 470 P.2d 662; *Commodore v. Armour & Co.*, (1968) 201 Kan. 412, 441 P.2d 815; *Goodrich v. Fahey*, (1960) 55

---

1. The extent of a bankruptcy court's jurisdiction is a matter somewhat in flux at the present time. Before the Bankruptcy Act of 1978, which became effective October 1, 1979, the bankruptcy courts were, as explained above, vested with summary jurisdiction. However, the jurisdiction of the bankruptcy courts created by the Act was much broader than that exercised under the previous system. *Northern Pipe Line Construction Co. v. Marathon Pipeline Co.*, (1982) 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598. "Eliminating the distinction between 'summary' and 'plenary' jurisdiction, the Act grants the new courts jurisdiction over 'all civil proceedings arising under Title II ... or arising in or related *to* cases under Title 11'." *Northern Pipe Line, supra*, at 54, 102 S.Ct. at 2862, citing 28 U.S.C., Sec. 1471(b) (original emphasis). Since Wilsons

filed bankruptcy on December 8, 1980, their proceeding was conducted under the bankruptcy court's expanded grant of jurisdiction pursuant to the 1978 Act. The liberalized jurisdiction of the bankruptcy courts was short-lived though; the *Northern Pipe Line* decision determined the Act in violation of Article III of the U.S. Constitution in that "the judicial power of the United States must be vested in courts whose judges enjoy the protections and safeguards specified in that Article". *Id.* at 62, 102 S.Ct. at 2867. The Supreme Court held, however, that their decision in *Northern Pipe Line* applied only prospectively, since a retroactive application of the holding would cause substantial hardship to litigants who had relied upon the Act's vesting of expanded jurisdiction. *Id.* at 88, 102 S.Ct. at 2880.

.

Wash.2d 692, 349 P.2d 729; 4 Collier on *Bankruptcy*, Sec. 68.20(4) at 945 (1978); 5 Remington on *Bankruptcy*, Sec. 2309 at 100 (1978 Supp.).

In 11 U.S.C.App., Bankr.Rule 7001, Part VII (1984), provision is made whereby the bankrupt or creditor may initiate an adversary proceeding by complaint to determine (2) the validity, priority or extent of a lien or other interest in property and (6) determine the dischargeability of a debt.

■ *In the Matter of Pierce v. Woodward*, (Bkrtcy.E.D.N.C.1983) 29 B.R. 612, throws some light on the problem. *Pierce* holds that the listing of a secured claim as being unsecured in the debtor's schedule does not require a response by the secured creditor since the secured creditor need only respond to a formal challenge to his security interest. *Pierce, supra*, at 614. A formal challenge, for example, results from the filing of adversary proceedings to avoid its lien or to determine its lien, with notice and opportunity to be heard on that issue. *Horner v. Hamner*, 249 F. 134 (4th Cir.1918) holds that the filing of the schedule in a proceeding in bankruptcy is an ex parte act on the part of the bankrupt, and that proceeding is a solemn, binding admission. It is in no proper sense, res judicata to the creditors. In *Polk County Fed. Sav. & Loan Assn. v. Weathers*, (Bkrtcy.D.Kan. 1981), 5 C.B.C.2d 935, it was held that discharge in bankruptcy does not prevent post-discharge enforcement of a valid lien on the property of the debtor, and a mortgage lien was held to survive the mortgagee's failure to file a proof of claim or to otherwise assert its interest during the course of the bankruptcy proceedings. *Weathers, supra*, at 941. The discharge, however, continues to enjoin the mortgagee's pursuit of the debtor for personal liability. *Id.*

■ The above authorities indicate that a mortgagee is not bound to enter the bankruptcy forum, but may wait and foreclose upon his security at a later time in another forum. The purpose of filing the schedule of claims is to inform the court of the persons entitled to notice and to limit the effect of the bankrupt's discharge. While the filing of the schedule of claims is binding upon the bankrupt as an admission, it is not res judicata to the creditors. *See* 8 C.J.S. *Bankruptcy* § 39 (1962).

■ Wilson's reliance upon *Gregory* is misplaced. In *Gregory*, a specific meeting was held to approve the payment plan, and notice was given to all creditors. The case simply held that Lawrence was bound by a formal proceeding. Conversely, the proceedings in the instant case were summary in nature, actually ministerial. Not only was there no proceeding pending to determine the status of the future advance notes, but the bank was told not to file a claim because the Wilson estate had no assets. The matter of the status of the future advance notes was never mentioned, claimed or litigated. We read the authorities to hold that to effect res judicata to foreclose a mortgagee's lien, something more is required, such as a formal challenge to his status by way of an adversary proceeding. Wilsons could have, if they wished, litigated this matter in the bankruptcy court by proceeding under Part VII, Rule 7001 in an adversary procedure to raise that question. There was no judgment or ruling made by the bankruptcy court as to the future advances, or for that matter, any of the claims. We therefore conclude that the act of the bankruptcy court in granting a discharge was not a determination of the question of the validity of future advance provisions, and therefore, not res judicata to a subsequent proceeding in another forum.

### Issues II and III: Appropriateness of Summary Judgment

Wilsons essentially argue under these assignments of error that the evidentiary matters supporting and opposing the Bank's motion for a summary judgment created an issue of material fact. They argue that there was nothing in the notes, or elsewhere, to show that the Bank or the Wilsons intended to treat the future advance notes as secured under the mort-

gage. Intent is a question of fact, and therefore a material issue. They correctly conclude that the burden is upon the Bank to establish the absence of material fact, and since it has not done so, the motion for summary judgment should have been denied.

As pointed out by the Wilsons, some cases have expressed certain limitations to the enforcibility of future advance clauses. One limitation occurs when there is no obligation on the part of the mortgagee to make future advances; they are optional. If the mortgagee has actual knowledge of subsequent encumbrances or conveyances of the mortgaged premises before making the advances, *his lien is not enforcible as against such subsequent encumbrances or conveyances. Brinkmeyer, supra: Schmidt, supra.* Another instance is that it is essential that the character of the debt and the extent of the encumbrances be defined with such reasonable certainty so as to preclude the parties from substituting other debts than those described, thereby making the mortgagee a mere cover for the *perpetration of fraud upon creditors. Bowen, supra; New, supra.* In the former case, the court used the language that "whether the two notes named … are secured by the mortgage can be determined by the evidence when the case is tried". *Bowen, supra,* 140 Ind. at 398, 39 N.E. 860.

The limitations expressed in the above cases concern only the protection of subsequent creditors, transferees and encumbrancers who have no knowledge or notice of the future advance and have nothing to do with the rights between the contracting parties. Here, there are no intervening transferees, encumbrancers, or creditors. Wilsons executed the mortgage containing the future advance clause and the future advance notes. There is no evidentiary material on hand which indicates that Wilsons were incompetent, that there was a mistake, or that the Bank misrepresented the transaction. The Indiana authorities are clear that future advance clauses are valid and the Bank, subject to the above mentioned limitations, has as valid a lien for the future advances as it does for the original note. The Wilsons are bound by their instruments and may not defeat them by a private, unexpressed intent. *Reagan v. Dugan,* (1942) 112 Ind. App. 479, 41 N.E.2d 841. *W.T. Rawleigh Co. v. Snider,* (1935) 207 Ind. 686, 194 N.E. 356.

For the above reasons, this cause is affirmed.

Judgment affirmed.

ROBERTSON and RATLIFF, JJ., concur.