**WEDZEB ENTERPRISES, INC., Appellant (Defendant/Third–Party Plaintiff Below),**

v.

**AETNA LIFE & CASUALTY COMPANY, Appellee (Third–Party Defendant Below).**

**ENVIRONMENTAL MANAGEMENT BOARD, Plaintiff,**

v.

**WEDZEB ENTERPRISES, INC., Defendant/Third Party Plaintiff,**

v.

**AETNA LIFE & CASUALTY COMPANY and Cincinnati Insurance Company, Third Party Defendants.**

**No. 06A04–9004–CV–176.[1]**

Court of Appeals of Indiana, First District.

April 22, 1991.

---

**1.** This case was reassigned to this office on    January 2, 1991.

Kent M. Frandsen, Parr, Richey, Obremskey & Morton, Lebanon, for appellant.

Norman T. Funk, Hill, Fulwider, McDowell Funk & Matthews, Indianapolis, for appellee.

BAKER, Judge.

We are asked today to determine the extent of an insurer's duty of good faith to its insured. The specific question Wedzeb Enterprises, Inc. (Wedzeb) raises is whether an insurer has an obligation to its insured to inform the insured of matters material to the extent of coverage when it is apparent to the insurer that the insured is unaware of such matters. We perceive the more narrow issue for our review to be does an insurer have a duty to ascertain whether the insured is aware of all sections of an insurance policy which may provide potential coverage in the future before submitting a release to the insured, when the insured is represented by counsel and the two parties are engaged in coverage litigation. We hold Aetna Life and Casualty Company (Aetna) did not have such an obligation in this case, and therefore affirm the trial court's grant of summary judgment in its favor.

## FACTS

Third-party plaintiff-appellant Wedzeb appeals the trial court's grant of summary judgment in favor of third-party defendant-appellee Aetna in Wedzeb's action for a declaratory judgment. The facts in this case are undisputed. Wedzeb, a distributor of surplus heating and air conditioning equipment and component parts, maintained a warehouse in Lebanon, Indiana. The warehouse and its contents were destroyed by fire on May 2, 1981. As a result, toxic polychlorinated biphenyls (PCBs) were emitted from some of the equipment.

On the date of the fire, Wedzeb was the named insured under an insurance policy issued by Aetna. Shortly after the fire, a dispute arose between Wedzeb and Aetna concerning, among other issues, whether the insurance policy covered the costs of

properly disposing of the PCB–contaminated debris. Wedzeb filed a claim against Aetna in federal court seeking a resolution of these issues. On May 19, 1982, while Wedzeb's claim was pending in federal court, the State of Indiana, through its Environmental Management Board (EMB) filed a civil action in the Boone Circuit Court against Wedzeb seeking injunctive relief and the payment of penalties in connection with clean-up of the site and removal of the contaminated debris. On August 8, 1982, the EMB action was resolved by a consent decree imposing obligations on Wedzeb relative to removal of the contaminated debris. The decree noted the pending litigation between Wedzeb and Aetna in federal court concerning insurance coverage.

The federal district court subsequently entered judgment for Wedzeb on its complaint against Aetna, and held that Aetna must bear the cost of disposal of the PCB–contaminated debris. Following the entry of this order, the claims asserted against Aetna were settled by the payment to Wedzeb of $474,326. Upon the receipt of this amount, Wedzeb released and forever discharged Aetna from all liability relative to the fire and debris removal.

Approximately two years after the release was signed, the Environmental Protection Agency (EPA) issued an administrative order compelling the commencement of clean-up activities at the site. The order noted no clean-up had yet occurred as was promised by the consent decree between the EMB and Wedzeb. The EPA subsequently cleaned up the site; however, proceedings remain pending by the EMB seeking civil penalties against Wedzeb and by the EPA for reimbursement of clean-up costs. On November 7, 1985, as part of the cause of action against Wedzeb by the EMB, Wedzeb filed a third-party complaint against Aetna requesting a declaratory judgment that Aetna was required to bear the additional costs of disposal and clean-up of the PCB–contaminated debris. Aetna moved for and was granted summary judgment, and Wedzeb now appeals.

**2.** Sections I and II are parts of a single policy

### DISCUSSION AND DECISION

This court applies the same standard as the trial court when reviewing an entry of summary judgment. Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. All evidence is construed in a light most favorable to the non-movant. *Cullison v. Medley* (1990), Ind.App., 559 N.E.2d 619. The facts in this case are undisputed; we must determine whether Aetna was entitled to judgment as a matter of law.

The release at issue in this case is clear and unambiguous, and reads in pertinent part as follows:

### RELEASE UNDER INSURANCE POLICY

William E. Daniels and Wedzeb Enterprises, Inc., do hereby … release and forever discharge the Aenta [sic] Life and Casualty Company of all liability under policy number 275M46475FCA issued by said Aetna Life and Casualty Company, and from all claims, demands, damages, actions or causes of action, of every kind or character, existing or hereafter accruing against them because of a loss suffered by fire and debris removal at the insured premises at Lebanon, Indiana, on or about May 2, 1981.

*Record* at 73. The release was signed by Wedzeb's president on September 23, 1983.

To avoid the operation of the release, Wedzeb argues Aetna breached its duty to Wedzeb of good faith and fair dealing, and thus cannot be protected by the terms of the release. Wedzeb argues Aetna breached its duty of good faith and fair dealing either because Aetna failed to inform Wedzeb of its potential coverage rights under Section II of the insurance policy, or because Aetna tendered a release designed to discharge its obligations under the entire policy when only Section I obligations had been in issue.[2]

issued by Aetna. Section I is what is typically

### Potential coverage

Aetna contends it had no duty to inform Wedzeb of the possibility of additional coverage under Section II of the policy because: Wedzeb was represented by its own legal counsel; Wedzeb and Aetna were already adversaries engaged in litigation at the time of the release; Aetna had no greater knowledge or information than was available to Wedzeb; there was no consensus of judicial authority, nor controlling authority in Indiana, creating the coverage Wedzeb desired; and, Aetna did not know or have reason to believe that Wedzeb was relying on Aetna for coverage advice at the time the release was signed when Wedzeb had its own counsel and the parties were engaged in coverage litigation.

The parties agree "Indiana has long recognized that there is a legal duty implied in an insurance contract that the insurer must deal in good faith with its insured." *Liberty Mutual Insurance Co. v. Parkinson* (1985), Ind.App., 487 N.E.2d 162, 164, *reh'g denied*, 491 N.E.2d 229, *trans. denied*. "This duty is breached when an insurer fails to settle a claim that could not in good faith be disputed." *Id.* at 164. Wedzeb does not argue Aetna failed to settle a claim that could not in good faith be disputed. *Liberty* does not support Wedzeb's claim that Aetna breached its duty in this case.

■ Wedzeb cites several cases from foreign jurisdictions to support its argument that Aetna breached its duty because it did not tell Wedzeb that Section II of the policy might provide some additional coverage for clean-up and debris removal. These cases are factually distinct from the case at hand, however. In *MFA Mutual Insurance Company v. Flint* (1978), Tenn., 574 S.W.2d 718, the court found the insurer acted in bad faith when the insured had no attorney, the insurer knew the insured had sustained serious bodily injuries,

the insurer knew it was completely liable for these injuries under the uninsured motorist provision of the policy, the insurer knew the insured was not aware of this complete liability, but the insurer did not inform the insured and paid the insured a lesser amount of money under a different policy provision. In *Lynch v. Mid–America Fire & Marine Insurance Co.* (1981), 94 Ill.App.3d 21, 49 Ill.Dec. 567, 418 N.E.2d 421, the insurer breached its duty of good faith when it was not forthright with the insured concerning the need for a proof of loss form. In *Palombo v. Broussard* (1979), La.App., 370 So.2d 216, the insurer acted in bad faith when it withheld information from the insured, who was not represented by counsel, about the stacking of insurance policies when the insured asked the insurer specific questions about the stacking procedure. In *Dercoli v. Pennsylvania National Mutual Insurance Co.* (1989), 520 Pa. 471, 554 A.2d 906, the insurer breached its duty when it advised the insured against obtaining independent legal counsel and assured her she would receive all that she was entitled to receive from the insurance company. The insurer undertook to advise and counsel the insured, and thus had to fully and completely disclose all benefits and coverage provided by the insurance policy. *Id.*

In this case, Wedzeb was represented by legal counsel, and Wedzeb and Aetna were involved in litigation concerning the coverage Aetna was obligated to provide. More importantly, at the time of the signing of the release, there was not a definitive answer to the question whether Aetna would be liable under Section II for the costs of clean-up that are at issue.[3] Insurers cannot be said to have a duty of informing insureds of coverage that may not even exist.

This is not a case where the insurer knew the insured had sustained a particu-

referred to as first party coverage, and covers specific property of the insured. Section II contains third party coverage, which indemnifies the insured against the claims of third parties.

**3.** Section II of the insurance policy requires the insurer to pay sums which the insured becomes

legally obligated to pay as damages caused by an occurrence. It was unclear at the time of the release whether the costs of complying with injunctive relief and paying penalties in conjunction with environmental clean-up would constitute damages.

lar injury, knew the policy covered that particular injury, and yet failed to inform the insured of this fact. The insurance policy contained two clearly marked sections, and was not unduly long or complicated. The release, signed by Wedzeb's president, was not simply a notation of release on a payment to Wedzeb but was a separate document. Wedzeb has presented no facts to us upon which we can conclude Aetna acted in bad faith by failing to inform Wedzeb of potential coverage under Section II of the insurance policy prior to the signing of the release.[4]

### Release

■ Wedzeb argues alternatively that Aetna breached its duty of good faith by tendering a settlement instrument discharging all of Aetna's obligations under the policy when only Section I obligations were in issue.

Wedzeb has not provided us with any pleadings from the various trial proceedings which demonstrate only Section I coverage had been in dispute. The release document is captioned at the top of the page *"RELEASE UNDER INSURANCE POLICY."* *Record* at 73. The language of the instrument releases and forever discharges Aetna "of all liability under policy number 275M46475FCA...." *Record* at 73. The language of the release clearly does not distinguish between Sections I and II of the insurance policy. If Wedzeb had intended to release Aetna from coverage liability under only Section I, it should not have signed this broad release. There is no allegation that Aetna forced Wedzeb to sign this release. Viewing the facts in a light most favorable to the non-movant Wedzeb, we find as a matter of law that Aetna did not breach its duty of good faith and fair dealing by tendering this release for Wedzeb's consideration and signature.

■ Wedzeb appears to argue, apart from the breach of duty allegation, that there was no meeting of the minds as to settlement of Section II coverage, and the release thus does not apply to Section II claims against Aetna. When the language of an instrument is unambiguous, the intent of the parties is determined from the four corners of the instrument. *Turnpaugh v. Wolf* (1985), Ind.App., 482 N.E.2d 506. A mere private reservation has no effect upon the operation of a release. *Rose v. Rose* (1979), 179 Ind.App. 299, 385 N.E.2d 458, *trans. denied.*

As stated above, the language of the release unambiguously released Aetna from all liability under the policy. At the time the release was executed, Wedzeb was being sued by the EMB and had already considered filing a third party action against Aetna for the liability represented by the EMB action. Wedzeb thus knew of its possible liability to third parties. There are no facts to demonstrate that there was not a meeting of the minds of the parties concerning the terms of the release.[5]

There are no genuine issues of material fact, and Aetna has demonstrated it is entitled to judgment as a matter of law. We therefore affirm the trial court's grant of summary judgment.

SHIELDS, J., concurs.

CONOVER, J., concurs in result without opinion.

---

**4.** Wedzeb does not contend it questioned Aetna concerning this type of coverage and Aetna failed to truthfully answer the questions.

**5.** In support of its argument, Wedzeb cites *Rauch v. Shots* (1989), Ind.App., 533 N.E.2d 193, *trans. denied.* *Rauch* dealt with the concept of

accord and satisfaction, however, not release. *See Lazarrus v. Employers Mutual Casualty Co.* (1977), 173 Ind.App. 452, 364 N.E.2d 140, for a brief discussion on the differences between the two concepts.