Robert L. UNDERWOOD d/b/a Sunrise Village Mobile Home Park, Appellant–Plaintiff,

v.

CITY OF JASPER MUNICIPAL UTILITY SERVICE BOARD and Thomas Lents, Appellees–Defendants.

No. 19A01–9612–CV–392.

Court of Appeals of Indiana.

April 23, 1997.

Rehearing Denied July 16, 1997.

Jerry D. Stilwell, Princeton, for Appellant–Plaintiff.

Edward J. Liptak, Douglas A. Hoffman, Miller Carson Boxberger & Murphy, Bloomington, for Appellees–Defendants.

## OPINION

ROBERTSON, Judge.

Robert L. Underwood, d/b/a Sunrise Village Mobile Home Park (collectively, Sunrise Village), appeals the grant of summary judgment in favor of the City of Jasper Municipal Utility Service Board and Thomas Lents, individually and as the agent of the Utility Board (collectively, the Utility Board). We restate the issues as:

I Did the Indiana Tort Claims Act either require Sunrise Village to give

the Utility Board notice of its claim or provide the Utility Board with immunity from a challenge to its sewer rates?

II Did the trial court have jurisdiction to consider a complaint which challenged whether sewer rates charged to Sunrise Village were just and equitable under Indiana Code Section 36–9–23–25?

We reverse.

This case was resolved by summary judgment. Our standard of review is well-established. The reviewing court faces the same issues that were before the trial court and follows the same process. *Greathouse v. Armstrong* (1993), Ind., 616 N.E.2d 364, 366. Although the party appealing from the grant of summary judgment has the burden of persuading the court that the grant of summary judgment was erroneous, the reviewing court carefully scrutinizes the trial court's decision to assure that the party against whom summary judgment was entered was not improperly prevented from having its day in court. *Id.*

Summary judgment is appropriate only if the pleadings and evidence sanctioned by Indiana Trial Rule 56(C) show 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.' Even if the facts are undisputed, summary judgment is not proper if those undisputed facts 'give rise to conflicting inferences which would alter the outcome.' *Bochnowski v. Peoples Federal Sav. & Loan Ass'n* (1991), Ind., 571 N.E.2d 282, 285. The burden is on the moving party to prove the non-existence of a genuine issue of material fact. *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 190. If the movant sustains this burden, the opponent may not rest upon the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. T.R. 56(E). If there is any doubt, the motion should be resolved in favor of the party opposing the motion. *Oelling,* 593 N.E.2d at 190.

*Mullin v. Municipal City of South Bend,* 639 N.E.2d 278, 280–281 (Ind.1994).

The evidence reveals that Underwood owns Sunrise Village, which is outside the city limits of Jasper, Indiana. At one time, Sunrise Village owned and operated its own sanitary sewer plant but later decided to connect its system to the sanitary sewer system operated by the Utility Board. At all pertinent times, Sunrise Village used the water system operated by the Utility Board. Underwood claims the representatives of the Utility Board told him that, when connected, the sewer charges to Sunrise Village would be based upon its usage of water, that is, the amount of water Sunrise Village would use per month, which is the same basis upon which the Utility Board charged its other customers.

The Utility Board maintains that everyone involved here knew Sunrise Village's existing sewer lines were in need of significant repairs to eliminate flow and filtration problems caused by many waters from different areas draining into the system. The Utility Board claims it informed Sunrise Village that the problems had to be addressed and repaired.

To accomplish the connection to the city sewer system, Underwood installed a new pumping station at Sunrise Village, conveyed the station and easements to the City of Jasper, and paid a hook-up fee to the city. After an inspection of the existing sewer lines, the Utility Board directed Sunrise Village to install a flow meter where its sewer lines met the city's sewer system. The flow meter measures the volume of materials which flow into the city's system from Sunrise Village.

The Utility Board later notified Sunrise Village that it had decided to base the wastewater treatment portion of Sunrise Village's utility bill on the flow meter readings instead of readings generated from water usage. Sunrise Village objected to the change in the method by which the Utility Board calculated the sewer charge.

The Common Council of the City of Jasper then adopted and amended an ordinance which provided that "the sewage works shall recover, from each user class, revenue which is proportional to its use of the treatment

works in terms of volume and load" and that "the sewage service shall be billed at appropriate rates" in light of the "quantity of water discharged into the sanitary sewage system." The Utility Board claims that the Common Council adopted the ordinance due to some sewer patrons' disproportionate use of the sewer system and that the Council had determined that a method of billing for actual sewer usage was in the best fiscal interest of its citizens. Sunrise Village claims that it is the only customer of the Utility Board which has its charges based upon volume of materials which flow into the city's sanitary sewer system.

Ultimately, Sunrise Village filed a complaint based upon alleged misrepresentations, representations, and assurances the Utility Board had given it on the sewer rate it would be charged. Sunrise Village sought monetary damages, reimbursement of sewer charges it had incurred under the flow meter rate, and an order requiring the Utility Board to bill it on the water usage rate or in a just and equitable amount. The trial court eventually granted summary judgment to the Utility Board, and Sunrise Village now appeals.

### I

The trial court granted summary judgment to the Utility Board because Sunrise Village had not provided the Utility Board with notice under the Indiana Tort Claims Act. The trial court also determined that summary judgment was appropriate because several provisions of the Act provided the Utility Board with immunity. *See* Ind.Code 34–4–16.5–7.

Because the Indiana Tort Claims Act is in derogation of the common law, we construe it narrowly against the grant of immunity. *Hinshaw v. Board of Commissioners of Jay County*, 611 N.E.2d 637, 639 (Ind.1993). The party which seeks immunity bears the burden to establish that its conduct comes within the Act. *Peavler v. Monroe County Board of Commissioners*, 528 N.E.2d 40, 46 (Ind.1988).

Although the Utility Board has asserted that Sunrise Village's complaints qual-

ify as tort claims under the Act, we note that Sunrise Village also has advanced some arguments based upon contract law and equity principles. Even if some or most of the claims lie in tort, however, the Utility Board has not established that the injuries involved here fall within the provisions of the Indiana Tort Claims Act.

The Tort Claims Act was enacted by the legislature in 1974, in response to the abrogation of the defense of sovereign immunity in *Campbell v. State* (1972), 259 Ind. 55, 284 N.E.2d 733. The Act grants immunity from liability for losses to governmental entities engaged in certain activities. *See* I.C. 34–4–16.5–3. Furthermore, the [A]ct requires a claimant to provide notice of a tort claim by filing such notice with the governing body of the entity and its risk manag[e]ment commission within one hundred eighty (180) days of the loss. I.C. 34–4–16.5–7. The failure of a claimant to make the required filings bars recovery. *Id.*

The subject matter of the Act includes claims or suits in tort. I.C. 34–4–16.5–1. However, the [A]ct only provides immunity from liability for "losses." Section 2(e) of the statute defines a "loss" as follows:

> (4) "Loss" means injury to or death of a person, or damage to property . . .
>
> *       *       *       *       *       *
>
> . . . Section 1 reads as follows:
>
> Application of chapter.—This chapter only applies to a claim or suit in tort. Burns Ind.Stat.Ann. section 34–4–16.5–1.
>
> Section 1 is a limitation on the application the Act; it is not a statement of what is covered by the Act. To the extent that sections 1 and 2(e) conflict, as a matter of statutory construction, the specific provision must take priority over the the [sic] general provision. *Houtchens v. Lane* (1965), 246 Ind. 540, 206 N.E.2d 131. Since section 2(e) is the more specific provision, it must control.

*Holtz v. Board of Commissioners of Elkhart County*, 548 N.E.2d 1220, 1221–1222 (Ind.Ct. App.1990) (because a claim of retaliatory discharge is not based upon a personal injury or death and an employee at will has no proper-

ty interest in his employment, the claim did not fall within the Tort Claims Act's definition of "loss," the notice provisions of the Act were inapplicable, and the Act did not bar the retaliatory discharge claim).

In the present case, Sunrise Village seeks compensation for amounts it claims the Utility Board improperly charged and for damages from alleged misrepresentations. Sunrise Village also seeks an order which requires the Utility Board to bill it by the method previously agreed upon and seeks an order that the Utility Board charge a just and equitable rate. None of Sunrise Village's claims qualify as an "injury to or death of a person or damage to property." Therefore, none of the claims qualify as a "loss" within the meaning contemplated in the Indiana Tort Claims Act.

For the reasons stated, the Utility Board has not established that the claims in the present case fall within the purview of the Indiana Tort Claims Act. Therefore, the notice and immunity provisions of the Act are inapplicable and do not bar Sunrise Village's claims. Sunrise Village has demonstrated that the Utility Board is not entitled to judgment as a matter of law on this issue. We therefore conclude that the trial court improperly granted summary judgment to the Utility Board.

## II

The trial court also granted summary judgment to the Utility Board because of a perceived lack of jurisdiction to address Sunrise Village's "prayer for a rate change." The trial court noted that the city sets sewer rates pursuant to I.C. 36–9–23–25, which provides, in pertinent part:

(a) The municipal legislative body shall, by ordinance, establish just and equitable fees for the services rendered by the sewage works . . .

\*        \*        \*        \*        \*        \*

(d) The municipal legislative body may use one (1) or more of the following factors to establish the fees:

\*        \*        \*        \*        \*        \*

(2) The amount of water used on the property.

\*        \*        \*        \*        \*        \*

(4) The amount, strength, or character of sewage discharged into the sewers.

I.C. 36–9–23–25. The municipal legislative body may exercise reasonable discretion in adopting different schedules of fees, or making classifications in schedules of fees, based on various factors. I.C. 36–9–23–25(e). Before adoption of the ordinance, however, the municipal legislative body shall hold a public hearing at which the users of the sewage works and owners of property connected to the works, among others, may be heard concerning the proposed fees. I.C. 36–9–23–26(a).

As noted, the Common Council of the City of Jasper adopted and amended an ordinance which allowed the Utility Board to "recover, from each user class, revenue which is proportional to its use of the treatment works in terms of volume and load" and which provided that "the sewage service shall be billed at appropriate rates" in light of the "quantity of water discharged into the sanitary sewage system." The ordinance either qualifies as an attempt to establish just and equitable fees under I.C. 36–9–23–25(a) or qualifies as a change or readjustment of the fees under I.C. 36–9–23–26(d).

Because the Common Council has the authority to set and readjust the charges, the trial court considered itself without jurisdiction to proceed on Sunrise Village's claims. The trial court relied upon the following portion of a recent case:

Moreover, we find the trial court did not have jurisdiction to change the rate to be charged by City. . . . [T]he city council has the exclusive jurisdiction of setting the rates which City may collect from [customers], *see* I.C. Sec. 36–9–23–25.

We find that neither the trial court nor we have subject matter jurisdiction to change the appropriate charge City may collect from Old State since November 1, 1988. The city council set a new ordinance rate to be effective for service provided to Old State. If Old State considers the rate

unreasonable, the city council should be addressed with this issue. The city council has the authority to determine a reasonable rate which should reflect that City provides only sewage treatment for Old State and not full sewer service.

*Customers of Old State Utility Corporation v. Old State Utility Corporation,* 576 N.E.2d 1311, 1313–1314 (Ind.Ct.App.1991).

■■■■■ The above authority is adequate as far as it goes. The courts have no power at law to set a proper sewer rate in the first instance or to change a sewer rate to a level which may be deemed proper. Our constitution and our statutes, however, allow a customer to object to improper sewer rates and appeal the rate determination. For example, our supreme court has noted that:

the judicial branch of the government may interfere with the rulings of administrative bodies adopted under the laws of the legislature whenever a judicial question is involved, as for instance in the case of fraudulent, arbitrary or capricious action by an administrative body, such a question is presented to the court below by the complaint for an injunction alleging the new rates are discriminatory, unjust, inequitable and confiscatory. It matters not that in this case the legislature has delegated the authority to the city council to fix sewage disposal rates instead of delegating such power to a commission or administrative agency. The right of a party to a judicial review in a proper case cannot be denied simply because of the nature of the agency or instrumentality to whom the legislature has delegated the rate making function. Relators concede for purposes of the first contention that no statutory remedy has been provided and we must hold that the right to judicial review is not dependent upon the legislature but is guaranteed by the due process and due course of law clauses of the federal and state constitutions (14th Amendment U.S. Constitution; Art. 1, § 12, Indiana Constitution), and this constitutional authority may not be denied by legislative action or nonaction.

*State ex rel. City of Marion v. Grant Circuit Court,* 239 Ind. 315, 317–318, 157 N.E.2d 188, 189–190 (1959) (trial court had jurisdiction to entertain suit, in equity and independently of statute, in action which sought an injunction against the collection of new sewage rates alleged to have been, among other things, unjust and inequitable). Thus, although a trial court has no power at law to set a sewer rate or to change a sewer rate to a level which may be deemed proper, the court still has equitable jurisdiction to consider the claim that a rate is outside the bounds of a proper rate where the legislature has not provided for an appeal of the rate determination.

■■■■ In the present case, however, the Indiana legislature has permitted the customer to object to sewage charges and appeal the rate determination. Indiana Code Section 36–9–23–26.1 allows owners of property connected to and served by the sewage works to file a written petition objecting to the rates and charges so long as the petitioners attended the public hearing provided under I.C. 36–9–23–26. *See* I.C. 36–9–23–26.1(a)(2). The statute continues:

(d) Upon the date fixed in the notice, the court shall, without a jury, hear the evidence produced. The court may confirm the decision of the municipal legislative body or sustain the objecting petition. The order of the court is final and conclusive upon all parties to the proceeding and parties who might have appeared at the hearing, subject only to the right of direct appeal. All questions that were presented or might have been presented are considered to have been adjudicated by the order of the court, and no collateral attack upon the decision of the municipal legislative body or order of the court is permitted.

(e) If the court sustains the petition, or if it is sustained on appeal, the municipal legislative body shall set the rates and charges in accordance with the decision of the court.

I.C. 36–9–23–26.1. Thus, the statutes permit either a challenge to the sewage charges or an appeal of the rate determination by means of certain proceedings before the Common Council, the trial court, and this Court.

The parties do not discuss whether they utilized the procedures set forth in the stat-

utes mentioned above. Similarly, the trial court did not base its decision on any of those procedures. We therefore will not address those procedures any further.

For the reasons stated, the trial court erroneously concluded that it had no jurisdiction to consider the objection to sewage rates and charges. Sunrise Village has demonstrated that the Utility Board is not entitled to judgment as a matter of law. We therefore conclude that the trial court improperly granted summary judgment to the Utility Board on this issue.

## CONCLUSION

The Utility Board did not meet its burden to establish that the conduct involved here fell within the provisions of the Indiana Tort Claims Act. Thus, the Act neither barred the claims of Sunrise Village nor provided the Utility Board with immunity. Further, the trial court did not lack jurisdiction to consider the challenge to the sewer rates and charges. As a result, a genuine issue of material fact remains on the the question of whether the rates are just and equitable under I.C. 36–9–23–25 and the Utility Board has not demonstrated that it is entitled to judgment as a matter of law. We therefore reverse the grant of summary judgment to the Utility Board.

Judgment reversed.

GARRARD and BARTEAU, JJ., concur.