**Charles J. OREM, Appellant–Plaintiff,**

v.

**IVY TECH STATE COLLEGE,
Appellee–Defendant.**

No. 49A02–9803–CV–267.

Court of Appeals of Indiana.

May 28, 1999.

Stephen A. Gross, Carmel, Indiana, Attorney for Appellant.

Richard A. Smikle, Paul H. Sinclair, Ice Miller Donadio & Ryan, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

Charles J. Orem filed his complaint for breach of contract and constructive fraud after Ivy Tech State College ("Ivy Tech") eliminated his position as Director of Institutional Research and Development. Orem had been appointed to that position in exchange for his release of grievances against Ivy Tech and held the position for approximately five years. On cross-motions for summary judgment, the trial court ruled in Ivy Tech's favor. In this appeal from those rulings, Orem raises three issues which we consolidate and restate as:

1. Whether Orem's claims are barred due to noncompliance with the notice and filing requirements of the Indiana Tort Claims Act.

2. Whether the contract in which Orem released his grievances against Ivy Tech in exchange for employment in a specific position converted Orem's at-will employment status into one requiring good cause for termination.

We affirm in part, reverse in part and remand with instructions.[1]

### FACTUAL AND PROCEDURAL HISTORY

Orem was hired by Ivy Tech in 1970 as an at-will employee. In 1991, he filed three internal grievances regarding the terms and conditions of his employment at the Kokomo Ivy Tech campus. In order to resolve the dispute, the parties executed a five-page "Re-lease Agreement" in which Orem released his grievances in exchange for his appointment as Director of Institutional Research and Development at the Kokomo campus.

On July 28, 1996, after having been employed in the directorship for five years, Orem was advised that his position would be eliminated effective August 31, 1996, due to a reorganization. Orem objected in writing and then requested appointment to an administrative position opening at Logansport. That request was denied. Orem refused to submit an application for the Logansport position and, instead, filed a complaint against Ivy Tech on September 6, 1996.

Orem amended his complaint on November 27, 1996. In Counts I and II, he alleged breach of contract and constructive fraud, respectively. In Count III, he sought punitive damages and attorney's fees for bad faith.[2] On or about February 7, 1997, approximately two and one-half months after he filed his amended complaint, Orem sent his tort claim notice by certified mail to Ivy Tech's board of trustees. On November 7, 1997, Ivy Tech moved for summary judgment on all claims. Orem responded with a cross-motion for summary judgment. The trial court heard argument and, on February 24, 1998, granted Ivy Tech's motion for summary judgment and denied Orem's cross-motion. This appeal followed.

## DISCUSSION AND DECISION

### Standard of Review

The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Bastin v. First Indiana Bank*, 694 N.E.2d 740, 743 (Ind.Ct.App.1998), *trans. denied.* When reviewing a grant or denial of summary judg-

---

1. We heard oral argument on April 13, 1999.

2. Ivy Tech moved to dismiss Orem's amended complaint "in its entirety" for failure to state a claim upon which relief could be granted under Indiana Trial Rule 12(B)(6). The trial court found that Orem had "stated a claim in Counts I and II of his Complaint. . . ." Apparently, the court granted Ivy Tech's motion as it related to

Count III. Nevertheless, in a subsequent trial brief, Ivy Tech argued it was entitled to summary judgment on Orem's claim for bad faith. On appeal, neither party briefed the issue of bad faith apart from the question of whether discharge due to business reorganization constitutes just cause. Because of our resolution of this case, we do not reach that issue.

ment, this court applies the same standard as does the trial court. *USA Life One Ins. Co. v. Nuckolls*, 682 N.E.2d 534, 537 (Ind.1997). Summary judgment should be granted only if the designated evidentiary material shows that there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Ind. Trial Rule 56(C); *Hoskins v. Sharp*, 629 N.E.2d 1271, 1276 (Ind.Ct.App.1994).

### Issue One: Tort Claims Act

■ Ivy Tech contends that it was entitled to summary judgment on all claims because Orem failed to comply with the notice and filing requirements of the Indiana Tort Claims Act (the "Act").[3] As a threshold issue, we must determine whether Orem's breach of contract and constructive fraud claims are governed by the Act, which applies only to "a claim or suit in tort." IND.CODE § 34–4–16.5–1.[4]

In support of its position that the Act applies to both claims, Ivy Tech cites *Bienz v. Bloom*, 674 N.E.2d 998 (Ind.Ct.App.1996), *trans. denied*. There, an at-will employee filed a complaint alleging that she was discharged by the Board of Commissioners of Elkhart County because she refused to participate in an unlawful act. *Id.* at 1001. Our court held that her retaliatory discharge allegation gave rise to an action in tort, not for breach of contract. *Id.* at 1002. Because the employee did not provide notice under the Act, her claim could not proceed. *Id.* at 1003.

■ In *Bienz*, however, the employee had no contract with her employer. Here, Orem and Ivy Tech negotiated a five-page written Release Agreement, a species of contract, and Orem alleges Ivy Tech breached a spe-

cific provision in that agreement. A tort has been described as " 'a legal wrong committed upon a person or property *independent of contract.*' " *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1249 (Ind.Ct.App.1998) (quoting BLACK'S LAW DICTIONARY 1489 (6th ed.1990)), *trans. denied.* Orem's breach of contract claim does not qualify as a tort claim, and the Act is inapplicable to that cause of action.

■ In contrast, Orem's constructive fraud claim involves alleged tortious conduct. As our supreme court explained:

> Constructive fraud, or legal fraud, arises by acts or course of conduct which, if sanctioned by law, would, either in the particular case or in common experience, secure an unconscionable advantage, irrespective of the existence of evidence of actual intent to defraud. It is where the law infers fraud from the relationship of the parties and the circumstances which surround them independent of the intention. In actual fraud intent is an element of primary importance, whereas in constructive fraud it is of no significance. Fraud in law is what the law condemns, from all the facts and circumstances surrounding a transaction, and is synonymous with constructive fraud. It is, as has been said, "a contradiction of terms to say that constructive fraud must be found as a fact, when in relation to certain well recognized transactions, it is fraud *ipso jure.*"

*Leader Publ'g Co. v. Grant Trust & Sav. Co.*, 182 Ind. 651, 660–61, 108 N.E. 121, 124 (1915) (quoting *Cotterell v. Koon*, 151 Ind. 182, 51 N.E. 235 (1898)). The elements of constructive fraud include a duty and violation of that duty by the making of deceptive material misrepresentations. *Rice v. Strunk*, 670 N.E.2d 1280, 1284 (Ind.1996).[5] Similarly, a

---

3. The Indiana Tort Claims Act is presently codified at Indiana Code §§ 34–13–3–1 to 3–25. In this case, statutes are cited as they existed at the relevant time.

4. This provision has been described as a limitation on the application of the Act, not a statement of what is covered by the Act. *Underwood v. City of Jasper Mun. Util. Serv. Bd.*, 678 N.E.2d 1280, 1283 (Ind.Ct.App.1997), *trans. denied.*

5. The elements of constructive fraud are:

(i) a duty owing by the party to be charged to the complaining party due to their relationship; (ii) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when the duty to speak exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining party as a proximate result thereof; and (v) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Rice*, 670 N.E.2d at 1284. Unlike actual fraud, a representation regarding future conduct can, in

tort has been defined as "a legal wrong, *breach of duty,* or negligent or unlawful act or omission proximately causing injury or damage to another." *See* IND.CODE § 34–18–2–28 (emphasis added). A tort involves the "violation of a duty imposed by general law or otherwise upon all persons occupying the relation to each other which is involved in a given transaction." BLACK'S LAW DICTIONARY 1489 (6th ed.1990). "There must always be a violation of some duty owing to plaintiff, and generally such duty must arise by operation of law and not by mere agreement of the parties." *Id.*

On appeal, Orem argues that Ivy Tech owed him a duty by virtue of their relationship. In his amended complaint, he maintains that Ivy Tech represented that his employment would not be terminated without just cause, that he relied upon that false representation, that he suffered injury and that Ivy Tech benefited from its "promissory misrepresentation." While Orem's constructive fraud claim relates to the Release Agreement, it is grounded in duty, breach of duty and deceit. Hence, this claim is in tort, and the Act applies.

### A. Notice of Claim

We must next decide whether Orem complied with the Act's notice and filing requirements. Tort claims against a political subdivision, such as a state college, are barred unless the governing body of the political subdivision is given notice of the claim within one-hundred and eighty days after the loss occurs. IND.CODE § 34–4–16.5–2(f)(7) and § 34–4–16.5–7. The purpose of notice is to provide an opportunity for the State to investigate, determine liability and prepare a defense to the tort claim. *Burggrabe v. Board of Pub. Works,* 469 N.E.2d 1233, 1235–36 (Ind.Ct.App.1984), *trans. denied.* Within ninety days after notice, the governmental entity must approve or deny the claim in writing or it is automatically denied. IND.CODE § 34–4–16.5–10. Whether a party has complied with the notice require-

ments of the Act is a question of law to be determined by the court. *Board of Aviation Comm'rs v. Hestor,* 473 N.E.2d 151, 153 (Ind. Ct.App.1985).

Here, in a letter dated July 28, 1996, Ivy Tech informed Orem that his job would be eliminated effective August 31 of that year. Ivy Tech asserts that the July 28 letter triggered Orem's duty so that notice of his claim was due on January 24, 1997. According to Ivy Tech's calculations, Orem's notice, sent by certified mail on or about February 7, 1997, is untimely.[6] The Act, however, provides that notice must be given within one hundred and eighty days "after the loss occurs." IND.CODE § 34–4–16.5–7. The July 28 letter merely informed Orem of an anticipated loss. The loss of salary and benefits attendant to active employment did not "occur" for purposes of the Act until Orem was actually discharged on August 31, 1996. Accordingly, the statutory period commenced running on that date, and notice of the constructive fraud claim was due one hundred and eighty days later, on February 27, 1997. Orem provided timely notice of his claim.

### B. Filing of Lawsuit

Ivy Tech also complains that Orem's lawsuit was prematurely filed. Pursuant to Indiana Code § 34–4–16.5–12, one may not initiate a suit against a governmental entity unless his claim has been denied in whole or in part. The notice provision is not a statute of limitation but a procedural precedent which must be fulfilled before filing suit in a state court. *Indiana Dep't of Pub. Welfare v. Clark,* 478 N.E.2d 699, 702 (Ind.Ct.App. 1985), *trans. denied, cert. denied,* 476 U.S. 1170, 106 S.Ct. 2893, 90 L.Ed.2d 980 (1986).

Here, Orem filed his original complaint on September 6, 1996, and his amended complaint on November 27, 1996. Both filings occurred before Orem sent his tort

---

certain instances, give rise to a claim for constructive fraud. *Wells,* 691 N.E.2d at 1250.

**6.** Notice of a claim required by the Act is "filed" upon mailing by registered or certified mail or upon delivery in person. *Wallis v. Marshall County Comm'rs,* 546 N.E.2d 843, 844 (Ind.1989)

(citing IND.CODE § 34–4–16.5–11). Orem contends he sent the notice of his claim on February 7, 1997. The "Domestic Return Receipt" indicates that the "Date of Delivery" was February 10, 1997.

claim notice on February 7, 1997. Accordingly, Ivy Tech had no opportunity to investigate and act upon Orem's constructive fraud claim before Orem commenced his lawsuit.

■ This court considered an analogous situation in *Bradley v. Eagle–Union Community Sch. Corp.*, 647 N.E.2d 672 (Ind.Ct. App.1995). There, the plaintiffs filed their complaint and amended complaint which was again amended in response to a motion to dismiss or, in the alternative, a motion for summary judgment. *Id.* at 674. Notice was served on the defendant school corporation when the second amended complaint was filed. *Id.* The trial court granted summary judgment in favor of the defendant. *Id.* On appeal, we recognized that Section 34–4–16.5–12 of the Act "prohibits a claimant from filing his suit before the claims procedure has been complied with." *Id.* at 676. Because the tort claim was filed prematurely, the trial court erred when it addressed the merits of the claim in the summary judgment motion. *Id.* We held that the trial court in *Bradley* should have dismissed the tort claim without prejudice. *Id.* Similarly, the trial court in this case should have dismissed Orem's constructive fraud claim without prejudice.[7] Thus, we reverse the grant of summary judgment on the constructive fraud claim.

### Issue Two: Breach of Contract

Finally, Orem contends that his release of grievances against Ivy Tech changed his at-will employment status to one requiring good cause for termination. To support his contention, Orem relies solely upon the following provision of the Release Agreement:

> In consideration of the agreement of Ivy Tech to accept Mr. Orem's proposal to withdraw his grievances and be assigned the position of Director of Institutional

Research and Development, which Mr. Orem is not otherwise entitled to receive, Mr. Orem hereby unconditionally releases and discharges Ivy Tech from any claims.... [8]

■ Generally, construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Francis v. Yates*, 700 N.E.2d 504, 506 (Ind.Ct.App.1998). When interpreting a written contract, we attempt to determine the intent of the parties at the time the contract was executed as discovered by the language used to express the parties' respective rights and duties. *Barrington Management Co. v. Paul E. Draper Family Ltd. Partnership*, 695 N.E.2d 135, 140 (Ind.Ct. App.1998). Absent ambiguity, the terms of a contract will be given their plain and ordinary meeting. *George Uzelac & Assocs., Inc. v. Guzik*, 663 N.E.2d 238, 240 (Ind.Ct.App. 1996), *trans. denied.*

■ Indiana has historically recognized two basic forms of employment: (1). employment for a definite or ascertainable term, and (2) employment at will. *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 717 (Ind.1997). Significantly, the Release Agreement makes no reference to a term of employment. Thus, Orem's employment is "presumptively terminable at any time, with or without cause, by either party." *Id.* That presumption, however, can be rebutted where adequate independent consideration "supports the employment contract" so that the court can "conclude that the parties intended to establish a relationship in which the employer may terminate the employee only for good cause." *Id.* at 718.[9]

■ Our court has stated that, in order to convert employment at will to employment

---

7. The six-year statute of limitations for actions seeking relief against frauds applies to constructive fraud as well as actual fraud. *Wells*, 691 N.E.2d at 1250. Thus, the constructive fraud claim is not time-barred. However, the only "promissory misrepresentations" alleged are those contained in the Release Agreement. *See* Issue Two, *infra.*

8. The Release Agreement specifically states that Orem releases all claims, including but not limited to "those based on allegations of breach of

contract, wrongful discharge, and those alleging discrimination on the basis of race, color, sex, religion, national origin, handicap, or any other basis under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1963 as amended, or any other federal, state, or local law, ordinance, rule or regulation."

9. The public policy exception and the doctrine of promissory estoppel may also rebut the presumption of at-will employment. *Orr*, 689 N.E.2d at 718.

requiring good cause for termination, "independent consideration supplied by the employee, which results in detriment to him and a corresponding benefit to the employer, must be given in return for permanent employment." *Hamblen v. Danners, Inc.,* 478 N.E.2d 926, 928 (Ind.Ct.App.1985); *but see Eck & Assocs., Inc. v. Alusuisse Flexible Packaging, Inc.,* 700 N.E.2d 1163, 1169 (Ind. Ct.App.1998) (independent consideration not required for "explicit, freely bargained for, written, just cause provision"), *trans. denied.* For example, the presumption of at-will employment was rebutted where an employer knew that the employee left a former job with assured permanency only upon assurances the new employer could guarantee similar permanency. *Romack v. Public Serv. Co.,* 511 N.E.2d 1024 (Ind.1987) (adopting and incorporating *Romack v. Public Serv. Co.,* 499 N.E.2d 768 (Ind.Ct.App.1986) (Conover, J., dissenting)). Also, in *Speckman v. City of Indianapolis,* 540 N.E.2d 1189 (Ind. 1989), our supreme court held that dismissal under Trial Rule 12(B)(6) was improper where the employee had released the employer from all wrongful discharge claims in exchange for an agreement to treat the employee in accordance with its personnel policies and procedures requiring "just cause" prior to disciplinary action. Earlier, in *Toni v. Kingan & Co.,* 214 Ind. 611, 15 N.E.2d 80 (1938), the release of personal injury claims in exchange for the promise of lifetime employment constituted adequate independent consideration. Likewise, conveyance of a valuable coal lease was held to be adequate independent consideration for a promise that the employee would be employed during the remainder of his natural life. *Mount Pleasant Coal Co. v. Watts,* 91 Ind.App. 501, 151 N.E. 7 (1926).

██ There is a significant difference between the cases cited and the instant case. Here, the Release Agreement contains no promise of job security. The issue is not whether Orem gave adequate independent consideration, but for what consideration he bargained when he abandoned his grievances. Orem relies on the contractual provision which states he would be "assigned the position of Director of Institutional Research and Development, which [he] is not otherwise entitled to receive" and argues that use of the words "assigned" and "entitled" means he was given permanent employment. These words cannot be construed so broadly. As used here, the word "assigned" simply means "appointed," i.e., that Orem would be appointed to the position. The phrase "not otherwise entitled to receive" means that Orem would not have been appointed to the position but for the agreement, not that Orem was given an entitlement or right to employment.

██ The Release Agreement provides for the release of grievances in exchange for a new position, Director of Institutional Research and Development. The contract does not contain a tenure provision. This court cannot revise a contract or supply omitted terms while professing to construe it. *Pepsi–Cola Gen. Bottlers, Inc. v. Woods,* 440 N.E.2d 696, 699 (Ind.Ct.App.1982). Accordingly, we decline to add a material term regarding job-security which does not appear in the Release Agreement.

██ Still, Orem insists that neither party could expect him to permanently release his grievances in exchange for an employment relationship that the college could terminate at any time. Our supreme court has recently reaffirmed that "it is in the best interest of the public not to restrict unnecessarily persons' freedom of contract." *Trimble v. Ameritech Publ'g, Inc.,* 700 N.E.2d 1128, 1129 (Ind.1998) (citations omitted). We presume that contracts represent the freely bargained agreement of the parties. *Id.*

██ In retrospect, Orem may have decided he gave "too much" for a position where he could be discharged without cause. This court, however, does not inquire into the adequacy of the consideration exchanged in a contract. *Ackerman v. Kimball Int'l, Inc.,* 634 N.E.2d 778, 781 (Ind.Ct.App.1994), *adopted in relevant part,* 652 N.E.2d 507, 509 (Ind.1995) (employer's promise to continue at-will employment was valid consideration for employee's promise not to compete with employer after his termination). Without a job-security provision in the Release Agreement, we must conclude that the bargained-

for exchange was the new position as Director of Institutional Research and Development. Accordingly, Orem remained an at-will employee in that position, and Ivy Tech had the right to discharge him without liability. The trial court properly granted summary judgment on Orem's breach of contract claim.

## CONCLUSION

We hold that the breach of contract claim is not subject to the procedural notice and filing requirements set forth in the Indiana Tort Claims Act. Nevertheless, on the merits, Orem's claim for breach of contract fails. The Release Agreement did not include a job-security provision. Orem remained an at-will employee when he became Director of Institutional Research and Development and could be discharged or could resign with or without cause. The trial court properly granted summary judgment in favor of Ivy Tech on the breach of contract claim.

However, the Act applies to Orem's constructive fraud claim which is barred due to noncompliance with the Act's filing requirements. Thus, the trial court should not have reached the merits of Orem's constructive fraud claim. We reverse that ruling and remand with instructions to dismiss the constructive fraud claim without prejudice.

Affirmed in part, reversed in part and remanded with instructions.

SHARPNACK, C.J., and BAILEY, J., concur.