

FILED

Feb 14 2018, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jay A. Rigdon
Rockhill Pinnick LLP
Warsaw, Indiana

ATTORNEYS FOR APPELLEE

Eileen S. Pruitt
Barnes & Thornburg LLP
South Bend, Indiana

Mark J. Crandley
Annette England
Barnes & Thornburg LLP
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Sandra S. Weaver,

*Appellant-Plaintiff,*

*v.*

Elkhart Community School
Corporation,

*Appellee-Defendant.*

February 14, 2018

Court of Appeals Case No.
20A03-1707-PL-1702

Appeal from the Elkhart Circuit
Court

The Hon. Michael A. Christofeno,
Judge

Trial Court Cause No.
20C01-1406-PL-175

**Bradford, Judge.**

# Case Summary

[1] Appellant-Plaintiff Sandra Weaver was married to David McGuire, an employee of Appellee-Defendant Elkhart Community School Corporation ("ECS"). As part of McGuire's employment contract with ECS ("the Contract"), ECS paid for a life insurance policy, with Weaver as the beneficiary. In 2012, after becoming ill, McGuire resigned from ECS (terminating the life insurance policy) and died early the next year. Weaver sued ECS, asserting several claims stemming from her allegation that an ECS employee advised her that McGuire should resign instead of applying for long-term disability coverage, which would have left the life insurance policy in place.

[2] ECS moved to dismiss (and later for summary judgment on) Weaver's claims, arguing that Weaver had failed to comply with the notice provisions of the Indiana Tort Claims Act ("the ITCA"). The trial court denied ESC's motions on ITCA grounds but granted it summary judgment on the basis that Weaver's claims are without merit as a matter of law. Weaver contends that the trial court erred in granting ECS summary judgment at all, while ECS argues that the trial court should have granted summary judgment and/or dismissed Weaver's claims on ITCA grounds. Because we are convinced by ECS's argument, we reverse the judgment of the trial court and remand with instructions to dismiss Weaver's claims.

# Facts and Procedural History

[3] Before he passed away, McGuire was married to Weaver and a supervisor of curriculum for ECS. Pursuant to the Contract, ECS paid for an insurance policy on his life, with Weaver as the beneficiary. McGuire developed brain cancer and, in the spring and summer of 2012, it became clear that he would not be able to continue working. On May 15, 2012, McGuire submitted his resignation to ECS, to be effective on July 1, 2012, which, *inter alia*, terminated the life insurance coverage. McGuire died on March 7, 2013.

[4] On June 23, 2014, Weaver sued ECS, asserting several claims, namely breach of fiduciary duty, constructive fraud, interference with contractual relationship, and breach of implied contract of good faith and dealing. At the heart of all of Weaver's claims is the allegation that an ECS employee advised her that McGuire should resign instead of applying for long-term disability coverage. It does not appear to be in dispute that, had McGuire applied for disability coverage instead of resigning, his life insurance coverage would have continued. Weaver requested damages in the amount of two years of McGuire's salary.

[5] On August 4, 2015, ECS moved to dismiss on the ground that Weaver had failed to serve the required statutory notice pursuant to the ITCA, which motion the trial court denied on January 6, 2016. On October 26, 2016, ECS moved for summary judgment both on the ITCA ground and the ground that the undisputed facts did not support Weaver's claims as a matter of law. On March 21, 2017, the trial court granted ECS's summary judgment motion. On

April 24, 2017 Weaver filed a motion to correct error that the trial court denied on June 26, 2017.

# Discussion and Decision

[6] Weaver contends that the trial court erred in entering summary judgment in favor of ECS on the basis that her claims failed as a matter of law. Also, apparently anticipating ECS's lead argument, Weaver argues that her claims are not subject to the ITCA, as they arose from the Contract and are, therefore, contract claims. ECS argues that the trial court should have dismissed Weaver's claims or entered summary judgment in favor of ECS on the ground that they sound in tort and that she failed to satisfy the notice requirements of the ITCA. We choose to address the fundamental question of whether Weaver's claims sound in tort or contract, the answer to which renders it unnecessary to address them further.

[7] As mentioned, Weaver brought claims of breach of fiduciary duty, intentional interference with contract, constructive fraud, and breach of the implied contract of good faith and dealing:

> 14. Defendant's action in advising McGuire and Weaver that McGuire should resign instead of applying for long term disability was a breach of Defendant's fiduciary responsibility to McGuire and to Plaintiff. Defendant was aware of the financial advantages that would accrue to it and the disadvantages that would accrue to Weaver should the alternative be taken, and failed to advise McGuire of those advantages.
>
> 15. Defendant's actions in this case constituted constructive fraud, and damaged Weaver.

16.  Defendant's advice to McGuire interfered with the contractual relationship that existed between McGuire and the life insurance company providing insurance coverage for McGuire.

17.  Defendant breached its implied contract of good faith and fair dealing as an employer of McGuire, and its advice cost McGuire a benefit that he believed he was entitled to, and Weaver insurance coverage that she would have received.

Appellant's App. Vol. II pp. 34–35.

[8]     The question is whether these allegations sound in tort or in contract, the claim that they sound in tort being the basis of ECS's motion to dismiss.

> A motion to dismiss under Ind. Trial Rule 12(B)(6) is made to test the legal sufficiency of the claim, not the supporting facts. *Hosler ex rel. Hosler v. Caterpillar, Inc.*, 710 N.E.2d 193, 196 (Ind. Ct. App. 1999).  When reviewing a T.R. 12(B)(6) motion to dismiss, we view the pleadings in the light most favorable to the non-moving party, and draw every reasonable inference in favor of that party.  *Minks v. Pina*, 709 N.E.2d 379, 381 (Ind. Ct. App. 1999).  We will affirm a successful T.R. 12(B)(6) motion when a complaint states a set of facts, which, even if true, would not support the relief requested in that complaint.  *Burress v. Indiana Farmers Mut. Ins. Group*, 626 N.E.2d 501, 503 (Ind. Ct. App. 1993), *trans. denied* (1994).  Moreover, we will affirm the trial court's grant of a motion to dismiss if it is sustainable on any theory or basis found in the record.  *Id.*  When reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine if the court erred in its application of the law.  *Novicki v. Rapid-American Corp.*, 707 N.E.2d 322, 323 (Ind. Ct. App. 1999).

*C & E Corp. v. Ramco Indus., Inc.*, 717 N.E.2d 642, 643–44 (Ind. Ct. App. 1999).

[9]     As a commentator has observed,

> The fundamental difference between tort and contract lies in the nature of the interests protected. Tort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by the law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties. They may be owed to all those within the range of harm, or to some considerable class of people. Contact actions are created to protect the interest in having promises performed. Contract obligations are imposed because of conduct of the parties manifesting consent, and are owed only to the specific individuals named in the contract.

WILLIAM L. PROSSER, LAW OF TORTS 634 (3d. ed. 1964). Along the same lines, the Indiana Supreme Court has noted that "[i]t is axiomatic that tort obligations arise, not from an agreement between the parties, but by operation of law." *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 518 (Ind. 1993).

[10]    Consistent with these principles, the appellate courts of Indiana have addressed whether each of the specific claims brought by Weaver is a tort and have determined that each is. This court has determined that "[b]reach of fiduciary duty is a tort claim for injury to personal property[.]" *Farmers Elevator Co. of Oakville v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010), *trans. denied*. As for constructive fraud, this court has declared that "[e]ven though a constructive fraud claim can relate to a contract, it is grounded in duty, breach of duty and deceit. Hence, a constructive fraud claim is a tort, and the Indiana Tort Claims Act applies to this claim." *Ind. Dep't Of Transp. v. Shelly & Sands, Inc.*, 756 N.E.2d 1063, 1077–78 (Ind. Ct. App. 2001), *trans. denied*. A claim for

interference with a contractual relationship—even though clearly related to and derivative of a contractual relationship—sounds in tort: "In contrast to a breach of contract claim, which does not necessarily involve intentional wrongdoing, a claim of intentional interference with contract is established only when there is tortious conduct, i.e., that which is intentional and unjustified." *Bilimoria Computer Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 156 (Ind. Ct. App. 2005).

[11]    Finally, a claim that a party to a contract has breached its duty of good faith and fair dealing with another party has also been squarely held to be a tort, despite, again, arising out of a contractual relationship:

> Indiana law has long recognized that there is a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured.[1] [*Vernon Fire & Cas. Ins. Co. v. Sharp*, 264 Ind. 599, 609, 349 N.E.2d 173, 181 (Ind. 1976)]; *Wedzeb Enterprises v. Aetna Life & Cas. Co.* (1991), Ind. App., 570 N.E.2d 60, 63; [*Liberty Mutual Ins. Co. v. Parkinson*, 487 N.E.2d 162, 164 (Ind. Ct. App. 1985), *trans. denied*]. Whether breach of this duty constitutes a tort involves a judicial balancing of three factors: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. [*Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991)].

*Erie Ins.*, 622 N.E.2d at 518. So, while we express no opinion on the merits of any of Weaver's claims, they are clearly all torts, as she alleges violations of

---

[1] We shall assume, without deciding, that ECS qualifies as an "insurer" and therefore had a duty to act in good faith with McGuire.

duties imposed by law, not by contract. None of Weaver's claims allege that ECS breached the terms of the contract in any respect, and a claim that does not allege the violation of a contractual duty is not a contract claim.

[12] Having determined that Weaver's claims sounded in tort, compliance with the notice provisions of the ITCA is a condition precedent to filing a tort suit against a qualifying political subdivision, which Weaver acknowledges did not occur in this case. *See Orem v. Ivy Tech State College*, 711 N.E.2d 864, 869 (Ind. Ct. App. 1999) (noting that the "notice provision is … procedural precedent which must be fulfilled before filing suit"), *trans. denied*. A claimant must tender the statutorily prescribed notice within 180 days after the alleged loss. *See* Ind. Code §§ 34-13-3-8, -12; *Orem*, 711 N.E.2d at 869 (noting that tort claims brought against a political subdivision "are barred unless the governing body of the political subdivision is given notice of the claim within one hundred and eighty days after the loss occurs."). Once a defendant raises the failure to comply with the ITCA, "the burden shifts to the plaintiff to prove compliance[,]" *Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind. Ct. App. 1999), which Weaver does not even attempt to do. Indiana courts have consistently held that the failure to comply with the ITCA's notice requirements requires dismissal. *See, e.g.*, *Orem*, 711 N.E.2d at 870. Because Weaver brought only tort claims against ECS but failed to comply with the notice provisions of the ITCA, we reverse the judgment of the trial court and remand with instructions to dismiss Weaver's claims on that basis.

[13] We reverse the judgment of the trial court and remand with instructions.

Robb, J, and Crone, J., concur.